HAMLIN *et al.* v. ABELL, *Appellant*.

Division Two, February 13, 1894.

1. **Agency**: DISCLOSURE OF PRINCIPAL. Where an agent intends to bind only his principal, it is his duty to disclose him.

2. ———: BROKER: COMMERCIAL PAPER. The mere fact that a person selling commercial paper is a broker, is not notice that he is acting as agent.

3. ———: ———: ———. The words "rediscounts, First National Bank, Fairmont, Neb.," contained in a schedule sent by a broker offering commercial paper for sale, do not notify the purchaser that the broker is acting as agent of the bank.

4. ———: DECEIT: FRAUD. The fact of agency is no defense to an agent in an action *ex delicto* for deceit or fraud.

5. **Fraud**: FALSE REPRESENTATIONS. Where one makes, as of his own knowledge, a false representation, not knowing whether it is true or false, it is a fraud as much as if he knew it to be false.

6. **Practice:** ADMITTED FACTS: INSTRUCTIONS.   Where .facts are admitted by the pleadings, and are uncontroverted by the evidence, it is not error to assume their truth for the purpose of instructing the jury.

7. **Note, Sale of:** MISREPRESENTATION: EVIDENCE.   In an action against the vendor of commercial paper for misrepresentation as to the solvency of its makers, evidence that the latter had paid other and different notes is immaterial.

8. ——: ——: ——.   It is necessary, in order to recover of the vendor in such action, to show that the indorser on the paper was insolvent.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Scammon, Crosby & Stubenrauch* for appellant.

(1)   The testimony was uncontradicted that the appellant sold these notes as the agent of the First National Bank of Fairmont, Nebraska, and that the respondents knew this at the time they purchased the notes.   The jury, therefore, should have been instructed to find for appellant.   *Ziegler v. Fallon,* 28 Mo. App. 295; *Hartzell v. Crumb,* 90 Mo. 630; *Kloster-man v. Tobler,* 58 Mo. 290; Mechem on Agency, secs. 555, 929; 1 Am. and Eng. Encyclopedia of Law, p. 401; *Worthington v. Cowles,* 112 Mass. 30; *Fleet v. Martin,* 7 L. R. Q. B. 126; *Fairlee v. Fenton,* L. R. 5 Ex. 169.   (2) The court erred in giving instruction number 1 of its own motion. It ignored entirely the gist of the action, viz., fraudulent intent, or such reckless conduct as was equivalent to a disregard of the rights of others.   *Dulaney v. Rogers,* 64 Mo. 201; *Dunn v. White,* 63 Mo. 181; *Welsh v. Morse,* 80 Mo. 568; *Red-path v. Lawrence,* 42 Mo. App. 101; *Anderson v. Pike,* 86 Mo. 293; *Fenwick v. Bowling,* 42 Mo. App. 516; *Kountz v. Kaufman,* 31 Mo. App. 397; 1 Smith's Leading Cases [6 Am. Ed.], part 1, 284.   (3) The court erred

in refusing to receive testimony from appellant that several notes of the parties on account of which the suit was brought, before negotiated by the appellant, had been paid promptly at maturity. (4) The testimony of E. L. Martin to the effect that he had paid his note by a conveyance of land, should have been admitted by the court. (5) The court erred in refusing to permit the appellant to show that the bank statement published in its circular was exactly what it purported to be, the thing called statement published by the bank in the newspapers, as immaterial and irrelevant. (6) The court erred in refusing to permit the appellant to show the efforts that he had made, through his agent Bostwick, to ascertain the real standing of the First National Bank of Fairmont, and in refusing to permit the letter of that bank's correspondent at Omaha to be introduced in evidence. Abbott's Trial Evidence, pp. 617–621. *Oberlander v. Spiess*, 45 N. Y. 175.

*Harwood & Meredith* and *Charles Offutt* for respondents.

(1) The rule that an agent may escape personal liability when he acts as agent, applies only: *First*, when the agent fully and unmistakably discloses the name of his principal; and, *second*, in actions brought upon contract. *McClellan v. Parker*, 27 Mo. 162; *Thompson v. McCullough*, 31 Mo. 224; *Schell v. Stephens*, 50 Mo. 379; *Adams v. Lindsell*, 1 B. & Ald. 681; *Levy v. Cohen*, 4 Ga. 1; *Ferrier v. Storer*, 63 Iowa, 484; *Abbott v. Shepard*, 48 N. H. 14; *Stockham v. Stockham*, 32 Md. 196; Story on Agency [9 Ed.], secs. 266, 267; Mechem on Agency, secs. 554, 929; *Cobb v. Knapp*, 71 N. Y. 352; *Baldwin v. Leonard*, 39 Vt. 260; *Bank v. Gallaudet*, 120 N. Y. 298; *Welch v. Goodwin*, 123 Mass. 71; *Raymond v. Mills*, 2 Met. (Mass.)

319; *Mills v. Hunt*, 20 Wend. (N. Y.) 434; Daniel on Neg. Inst. [3 Ed. 1885], sec. 740*a*. (2) The elements of deceit once established, appellant can not escape liability on the ground that he acted as agent. If the charge be true, he committed a tort, and is personally responsible therefor, even though he had expressly stated that he acted as agent and fully disclosed the name of his principal. *Swaggard v. Hancock*, 25 Mo. App. 596; *Reed v. Peterson*, 91 Ill. 297; *Lee v. Matthews*, 10 Ala. 682. (3) The representations relied upon in this case were statements of fact by Abell as of his own knowledge; if it is shown that these statements were false, Abell can not excuse himself by proving that he acted upon information given him by others, which he believed to be true. *Buford v. Caldwell*, 3 Mo. 477; *Caldwell v. Henry*, 76 Mo. 254; *Welsh v. Morse*, 80 Mo. 568; *Dunn v. White*, 63 Mo. 181; *Dulaney v. Rogers*, 64 Mo. 201; *Kountz v. Kaufman*, 31 Mo. App. 397; *Glasscock v. Miner*, 11 Mo., 655; *Cotrill v. Krum*, 100 Mo. 397; *Fisher v. Mellen*, 103 Mass. 503; *Litchfield v. Hutchinson*, 117 Mass. 195; *Kirkpatrick v. Reeves*, 121 Ind. 280. (4) The instructions requested for appellant were all either, *first*, in conflict with the principles of law as above stated, or *second*, did not recognize their application to the case at bar. *Caldwell v. Henry*, 76 Mo. 254; *Kountz v. Kaufman*, 31 Mo. App., 397; *Bank v. Gallaudet*, 120 N. Y. 298; *Nicol's Case*, 3 DeG. & J., 439; *Railroad v. Horst*, 93 U. S. 295; Moncrief on Fraud, pp. 185, 186; 2 Thompson on Trials, sec. 2349, 2352. (5) There was no error in the rejection of evidence offered by the appellant, because said evidence was either, *first*, incompetent, immaterial and irrelevant, or, *second*, was not sufficient to have changed the result of the trial. (6) If objectionable evidence was admitted, or proper evidence rejected, the error was without

prejudice because not of sufficient importance to affect the result of the trial.

GANTT, P. J.—This is an action for damages growing out of alleged deceit and misrepresentations in the sale of three pieces of commercial paper. Plaintiffs were, during the transactions complained of, and now are, copartners in the general banking business, buying and selling notes and bills of exchange in the city of East Bloomfield, in the state of New York. They allege that prior to the twenty-eighth day of April, 1888, the defendant, Abell, who resides in Kansas City, Missouri, was the owner of, and held for sale, three promissory notes in words and figures following:

"$1,000.        FAIRMONT, NEB., April 2, 1888.

"October 2nd, '88, after date, for value received, I or we, promise to pay J. O. Chase, President, or order, $1,000, at the National Bank of Commerce, Kansas City, with interest at 10 per cent. per annum after maturity.

"[Signed.]                J. W. WALTERS.

"[Indorsed] Pay M. B. Abell, or order, First National Bank of Fairmont, Neb.

                "J. O. CHASE, President."

"$806.90.        FAIRMONT, NEB., April 12, 1888.

"October 12th, after date, for value received, I or we, promise to pay J. O. Chase, President, $806.90-100, at the National Bank of Commerce, Kansas City, with interest at 10 per cent. per annum after maturity.

"[Signed]                CHASE & WALTERS.

"[Indorsed] Pay M. B. Abell, or order, First National Bank of Fairmont, Neb.

                "J. O. CHASE, President."

"$800.        FAIRMONT, NEB., April 7, 1888.

"Four months after date, for value received, I or we, promise to pay J. O. Chase, president, or order, $800, at the National Bank of Commerce, Kansas City,

with interest at 10 per cent. per annum after maturity.

"[Signed]                          E. L. MARTIN.

"[Indorsed]    Pay M. B. Abell, or order, First National Bank of Fairmont, Neb.

"J. O. CHASE, President."

"That in order to induce these plaintiffs to buy the aforesaid three promissory notes the defendants *falsely and fraudulently represented* to the plaintiffs in writing that the said names thereon, that is to say, the makers and indorsers thereof 'were responsible and always and reliably prompt,' and that the said E. L. Martin was a 'large dealer in coal, and stock feeder and shipper, and doing a successful business. The note is well secured by collateral.' J. W. Walters was 'a large and prosperous cattle grower and feeder and pays his obligations promptly. This note is well secured by collateral.' And that the said Chase & Walters was a firm 'in good financial circumstances and engaged in raising horses and cattle. They own a large amount of stock and they are prompt.' And that the First National Bank of Fairmont, Neb., had a surplus fund of $3,000, and undivided profits of $4,196. A copy of which writing has been hereto annexed and made a part thereof marked 'schedule A.' And thereupon the plaintiffs believing said representations, and all of them, to be true and not knowing otherwise and relying solely upon said representations of the defendant, were induced and did buy the said three promissory notes mentioned, and paid therefor on April 28, 1888, the sum of $2,521.80-100, but plaintiffs say that said statements and representations so as aforesaid made by the defendant were not true and were by the defendant known not to be true, and were made by defendant without any knowledge of the truth of any of said statements.

"The said names upon said notes, that is to say the makers and indorsers thereof were not responsible

and were not prompt, and the said E. L. Martin was not a dealer in coal, and a stock feeder and shipper, nor was he doing a successful business, and the said note made by him for $800 was not secured by collaterals or at all; and the said J. W. Walters was not a large and prosperous cattle grower or feeder, and did not pay his debts promptly or at all, and the said note for $1,000 made by said Walters, was not secured by collateral or at all; and the said firm of Chase & Walters was not in good financial circumstances, nor engaged in raising horses and cattle, nor did they own a large amount of stock, nor were they prompt; and the said First National Bank of Fairmont had no surplus fund or surplus, and no undivided profits; and the said E. L. Martin, J. W. Walters, the First National Bank of Fairmont and Chase & Walters, were each and all of them unable to pay their debts and were insolvent, remained so and still are insolvent; all of which defendant then well knew, and the plaintiffs have not been able to collect said notes or any part thereof, and are unable to obtain payment for any part thereof, and the same and all thereof are utterly worthless. And the said plaintiffs, by reason thereof, say that the said notes, nor either of them, were of any value to these plaintiffs, and the plaintiffs have lost the use of their money and the interest thereon, to wit, $2,521.80, by them expended in purchasing the said notes, and that the interest upon and use of said money was, and is, of the value of six per cent. per annum thereon, and that the plaintiffs have also lost and incurred court costs and attorney's fees, to wit, $250, in fruitless and unsuccessful efforts to collect the said notes and all thereof by reducing the same to judgment, and the said notes and each and every one thereof were, and so as aforesaid sold by the defendant to these plaintiffs, wholly and absolutely worthless. Wherefore they pray judgment."

Hamlin v. Abell.

The schedule "A" referred to in the petition is as follows:

SCHEDULE A.

KANSAS CITY, MO., April 21, 1888.

Subject to previous sale or withdrawal. Please telegraph by name if wanted. When not otherwise stated, payable in New York or Boston.

List of paper offered for sale by M. B. ABELL, Dealer and Broker in Commercial Paper, National Bank Stock, Bond and other investment securities, 609 DELAWARE STREET, - KANSAS CITY, MO.

These names are responsible. If you wish to investigate them, please wire me, and when possible, will hold paper for you.

| PROMISOR OR ACCEPTOR. | DRAWER OR INDORSER. | DUE. | AMOUNT. | RATE. |
|---|---|---|---|---|
| REDISCOUNTS. | Payable to and indorsed by the FIRST NATIONAL BANK, Fairmont, Nebraska. | As stated. | | 7½ per cent. |
| E. E. MARTIN, Fairmont, Neb. He is a large dealer in coal, and stock feeder and shipper and doing a successful business. Note is well secured by collateral. ......$ 800 00 Due August 10th, '88. | STATEMENT OF FIRST NATIONAL BANK, Fairmont, Neb. February 14th, 1888. | | | |
| J. W. WALTERS, Fairmont, Neb. He is a large and prosperous cattle grower and feeder and pays his obligations promptly. This note is well secured by collateral. October 5th, '88............ 1,000 00 | RESOURCES. Loans and discounts................$ 95,006 67 United States bonds to secure circulation.... 11,500 00 Other stocks, bonds and mortgages.......... 9,868 00 Real estate, furniture and fixtures.......... 7,055 60 Current expenses and taxes paid.......... 3,099 52 Premiums.................. 1,046 88 Cash and sight exchange.......... 11,619 44 Redemption fund.......... 562 50 Total.... ......$140,689 61 | | | |
| FAIRMONT LAND AND CATTLE CO., Fairmont, Neb. This company is worth over $20,000 in real estate and live stock. They are good and prompt. Due, September 4th, '88. .... 758 25 | LIABILITIES. Capital paid in................$ 50,000 00 Surplus fund.......... 3,000 00 Undivided profits .......... 4,199 00 Circulation .......... 11,250 09 Deposits .......... 47,267 87 Notes and bills rediscounted .......... 24,975 65 Total.................. $140,689 61 | | | |
| CHASE & WALTERS, Fairmont, Neb. This firm is in good financial circumstances, and engaged in raising horses and cattle. They own a large amount of stock and they are prompt. Due, October 15th, '88........... 806 90 | The above statement is true to the best of my knowledge and belief.     CHAS. E. WALTERS, Cashier. Correct—Attest: J. O. Chase, F. C. Page and Chas. E. Walters, Directors. | | | |
| These notes are made payable at the National Bank of Commerce, Kansas City, Mo. The actual time required for return transit of funds will be allowed; also one-tenth of one per cent. for collection charges. | | | | |
| They are always and reliably prompt. | | | | |

M. B. ABELL.

(Signed.)

For answer to plaintiffs' petition defendant stated that at all the times named in the petition and for a long time prior thereto, he was engaged in business in Kansas City as a broker in stocks, bonds and negotiable paper for others, of which fact the plaintiffs herein were at all times fully advised. That in the month of April, 1888, the First National Bank of Fairmont, in the state of Nebraska, a corporation under the laws of the United States, doing a banking business at Fairmont, and for whom he had often acted previously thereto in his said capacity of broker of negotiable papers and as often found them reliable in their statements, placed in the hands of the defendant the notes set forth in the plaintiffs' first count aforesaid, with instructions to defendant to present the same to his customers, and to procure the same to be rediscounted for a reasonable commission to be paid defendant by said bank for his services, and that in order to enable defendant to present such paper to his customers, the said bank, by its officers, gave to him, the defendant, the standing of the makers of said notes substantially and in effect as set forth in exhibit "A." That in good faith believing the said statement to be true, he, defendant, as agent of said First National Bank, presented the said statement to the said plaintiffs and they rediscounted for the said First National Bank of Fairmont, and not for this said defendant the said notes set forth in the petition. That the said plaintiffs understood and well knew at the time of the making of such rediscounts, that although said paper was indorsed to him, he had no interest therein except such brokerage as might accrue to him from the discounting by the plaintiffs of the said notes aforesaid for the said First National Bank of Fairmont, Nebraska, this defendant's principal, and not otherwise. That the matters herein set forth are the matters complained of

in the plaintiff's petition and not otherwise. Except as herein set forth and admitted, the defendant denies, each and every, the allegations in the second count of plaintiff's petition, and prays judgment for costs.

The reply of plaintiffs was a general denial of the answer. There was a verdict and judgment in the circuit court of Jackson county for $2,990.38.

The evidence disclosed that about the twenty-first day of April, 1888, the defendant mailed to the plaintiffs the printed circular, or schedule "A,"filed with the petition. They received it on the twenty-fourth of April and on the same day wired their acceptance. One of the four notes was as represented and was paid at maturity, the other three, those described in the petition, went to protest, were worthless, and were not at all as represented in the circular. Plaintiffs then brought suit against the makers and indorsers, recovered judgment, and issued executions, all of which were returned "no property found."

Prior to the receipt of this circular, plaintiffs had made other purchases of defendant. Before trading with him they had ascertained that "he was doing a legal business, was wealthy, and was considered reliable in every way." Financial men in Kansas City had advised plaintiffs "they would not be afraid to discount paper simply on his representations." Plaintiffs testified that they believed the statements contained in the circular and made the purchase of the three notes upon the faith of it. On the twenty-fifth of April, 1888, the defendant forwarded the notes to plaintiffs with this letter:

"KANSAS CITY, Mo., April 25th, 1888.
"*Messrs. Hamlin & Co., East Bloomfield, N. Y.*

"GENTLEMEN:—Inclosed, I hand you notes, rediscounts, First National Bank, Fairmont, Neb., as per statement. Please discount at 8 per cent. and remit

proceeds to Kountze Bro., New York, for account National Bank of Commerce, this city, *my use* and *wire me* when you remit.

"Respectfully,

"M. B. ABELL."

On the twentieth of August, 1888, plaintiffs wrote to defendant to advise them what kind of a security he held for the notes sold them, reminding him that he had stated they were secured by collaterals. He answered he had none. The evidence was uncontradicted *that there never was any collateral security to either note.* The other facts will appear in the opinion.

I.   Much space is devoted in the briefs as to plaintiffs' knowledge of defendant's relation to the notes he sold plaintiffs; whether he acted in his own behalf, or for an undisclosed principal, or was merely the agent and broker of the Fairmont bank. It is insisted that the circular and the letter remitting the notes at the time of the sale to plaintiffs sufficiently indicate that defendant was merely a broker for the Fairmont bank. With this view we can not concur. There is nothing in the mere business of a broker which necessarily raises the inference that he is not the owner of a particular piece of commercial paper, or personal property, which he offers to sell, nor do the words "rediscounts, First National Bank, Fairmont, Nebraska," have such a significance. All that they indicate by and of themselves, is that the same notes had been once discounted by that bank. It does not follow that the bank was still the owner, and, moreover, this offer to sell was made, and accepted, *with reference to the proposition contained in the circular*, and was mutually binding three days before this letter was received by plaintiffs. If an agent would bind only his principal it is his duty to disclose him. It is in his power always to do this, and when he fails to do so, it must be taken that he intends

to bind himself. *McClellan v. Parker*, 27 Mo. 162; Mechem on Agency, secs. 554, 929; *Cobb v. Knapp*, 71 N. Y. 348, *loc. cit.* 353. As was said in *Bank v. Gallaudet*, 120 N. Y. 298: "There is nothing in the language used that tends to indicate *who* the principal was and we have been unable to find any evidence that raises a question of fact upon this subject."

We think this record is barren of any evidence that tends to show that plaintiff ever disclosed or intended to disclose who his principal was, if he had one, much less that he was representing the Fairmont bank.

We say this much because defendant urges this agency as a complete defense to this action; but in our view of this case, if plaintiff is entitled to recover at all, it is not material whether defendant acted as a broker for the Fairmont bank, or for himself, because if the representations made by him were *fraudulent in law*, and the cause of the loss to plaintiffs, he is liable to them whether principal or agent.

This is not an action *ex contractu*, but for tort. The fact, if true, that defendant perpetrated this fraud on plaintiffs as an agent of the Fairmont bank can afford him no excuse, either in morals or law. Such a doctrine can not be countenanced by courts of justice. The authorities cited as to the agent's liability in contracts made for his principal do not reach the question of his liability for his deceit, or fraud, or other torts. *Reed v. Peterson*, 91 Ill. 288; *Campbell v. Hillman*, 15 B. Monroe, 508; Mechem on Agency, sec. 573.

II. The defendant complains of the first instruction given by the court of its own motion. After reciting that defendant admitted sending the circular in which it was stated that the notes were well secured by collateral, and that at the time he made said representations he had no actual knowledge of the truth or falsity of these representations, the jury were instructed that if

they believed "from the evidence that these representations were made by the defendant to plaintiffs for the purpose of inducing plaintiffs to purchase such notes, and the plaintiffs, in reliance upon such representations, bought such notes, and such representations were untruths, and the said E. L. Martin, J. W. Walters, and Chase & Walters, and the First National Bank of Fairmont, Nebraska, were, when such notes became due, and thereafter continued to be, insolvent, and their notes were of no real value, then the jury will find for plaintiffs the amount paid for such notes by plaintiffs, with interest added thereto at the rate of six per cent. per annum since the date of such payment by plaintiffs."

He claims that it ignores the gist of the action, to wit: the fraudulent intent or reckless conduct that would show a disregard of the rights of others. We are cited to *Dulaney v. Rogers*, 64 Mo. 201. In that case Judge NORTON says: "It seems to be established that an action based upon the deceit or fraudulent representations of another, can not be maintained in the absence of proof that the party making them believed, or had good reason to believe at the time he made them that they were false, or *that he assumed or intended to convey the impression that he had actual knowledge of their truth, though conscious that he had no such knowledge. When the above facts are proved the scienter necessary to maintain an action for deceit, founded on fraudulent representations, is established.*" And quotes from *Dunn v. Oldham's Adm'r*, 63 Mo. 181, with approval, this extract: "It is not, however, always absolutely necessary that an actual falsehood should be uttered to render a party liable in an action for deceit; *if he states material facts as of his own knowledge,* and not as a mere matter of opinion or general assertion, about a matter of which he has no knowledge what-

ever, this distinct willful statement in ignorance of the
truth, is the same as the statement of a known false-
hood, and will constitute a *scienter.*" The instruction
complained of here is almost in the identical words of
the instruction approved in *Dulaney v. Rogers, supra.*
To the same effect is *Raley v. Williams,* 73 Mo. 310.

In *Caldwell v. Henry,* 76 Mo. 254, the court
instructed the jury that, "although you may find from
the evidence that defendant did not know said repre-
sentations were untrue, yet if you believe from the evi-
dence that, pending the negotiations for the purchase
of said land, and for the purpose of effecting the trade
and inducing said agent to make it, *defendant made said
representations as of his own knowledge (and they were
untrue),* but did not know whether they were true or
false, and knew, or had reason to believe, that said
agent relied on said representations as true, and said
agent did so rely on them, and was thereby deceived,
and induced to trade for or purchase said land," they
would find for plaintiff, and it was challenged; but this
court unanimously held it was correct, saying that the
false representations as of his own knowledge, and not
as a mere matter of opinion about a matter *of which he
knew nothing whatever,* and so made *in ignorance of the
truth,* is the same as a known falsehood, and will con-
stitute a *scienter.* The same rule is repeated in *Walsh
v. Morse,* 80 Mo. 568.

Indeed, there is no conflict in the opinions in this
state on the subject. While it is true that in all cases
it is held that the petitions must allege the representa-
tions *were fraudulent,* in all of them it is held that a
statement of material facts by one *as of his own knowl-
edge, not merely as an opinion or general assertion,* about
a matter of which he knew nothing whatever, a willful
statement in ignorance of the truth, is the same as a
statement of a known falsehood and will constitute
*a scienter.*

An examination of the pleadings will show that defendånt admitted that he sent to plaintiffs a written statement, in which he made the *distinct, unequivocal statement that two of these three notes were "well secured by collateral,"* and that "the makers of the other note *were in good financial circumstances and owned a large amount of stock."* In his testimony he admits that he did not know J. W. Walters or E. L. Martin until the day of the trial. He *had met Chase* in 1886, but had never visited *his farm,* and *did not know what business Chase and Walters or J. W. Walters were engaged in.* He also stated *that he did not know of his own knowledge that either of these notes was secured by collateral.* Here, then, we have the distinct written statement by defendant of the material fact that these notes were secured by collateral; and there was no room for an opinion—the collateral was on hand or it was not; the fact that this statement was false in fact, as they all agree that no collaterals were given with either note; that said defendant made these representations in ignorance of whether they were true or false, and made them for the purpose of inducing plaintiffs to purchase said notes; that they did rely upon these statements alone and purchased said notes. Is it possible to regard these representations, made in the terms, manner and for the purpose they were, otherwise than as a statement *"as of his own knowledge?"* His statements were printed, not oral; they were made deliberately and with all the preparation which the preliminary work of publishing requires; they were positive and unqualified; there was no hint that the author was making them solely upon the unverified and unexamined information of others. The question whether the statements would reach respondents was not left to mere chance. Abell saw to it that they should receive the printed circulars directly from him.

Upon the strength of all these circumstances, respondents, living hundreds of miles from the scene of Abell's transactions, relying, as they had a legal right to do, *upon his unqualified* assertions, invested their money and lost it, for no other reason than because his statements proved to be utterly untrue. Can it be denied that Abell is the author of the wrong which respondents have suffered, and does not every principle of law and equity demand that he shall right that wrong? *An unqualified statement* that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose. Bennett's Notes to Benj. on Sales, p. 448; *vide*, also, *Lumber Co. v. Mihills*, 80 Wis. 540; *Joliffe v. Baker*, 11 Q. B. Div. 255.

In *Converse v. Blumrich*, 14 Mich. 109, it was urged, as it is in this case, that defendant believed the representations which were untrue to be correct; but Judge COOLEY said: "The legal aspect of the case would not be different if we came to that conclusion, since the courts must look at the effect of untrue statements upon the person to whom they are made, rather than to the corrupt motive of the one making them. If one obtains the property of another by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud;" citing *Ainslie v. Medlycott*, 9 Ves. 21; *Taylor v. Ashton*, 11 M. & W. 401; *Smith v. Richards*, 13 Pet. 26; *Lockridge v. Foster*, 4 Scam. 569; *Smith v. Babcock*, 2 Wood. & M. 246; *Tuthill v. Babcock*, 2 Wood. & M. 298. See, also, *Totten v. Burhans*, 51 N. W. Rep. (Mich.) 1119.

*Lynch v. Mercantile Trust Co.*, 18 Fed. Rep. 486,

was an action for damages for false representations in the sale of certain property. The court, per NELSON, J., says: "He made these representations in such manner and in such terms as, stated in the cases cited by defendant, '*were calculated to produce the conviction in the mind of the purchaser that he had personal knowledge of their truth; that he made the statement relied on upon what he knew as distinguished from what he heard.* This was not true, and he himself knew at the time it was not true, and from these circumstances the intent to deceive the purchaser could very naturally be inferred.' This extract very clearly states the law."

*Rothschild v. Mack*, 115 N. Y. 1; s. c., 21 N. E. Rep. 726, decided in 1889, was a case much like this. The representations were that "the makers of a note were perfectly solvent." The court said, as to the party who made the representations: "At the same time he either knew or did not know of the financial condition of the makers of the note. If he did know it, then he, knew that the note, as to both makers and indorsers, was without value. * * * * He certainly meant to convey the impression of actual knowledge of the truth of the representations he made as to the value of the note, and he either knew such representations were false or else he was conscious that he had no actual knowledge while assuming to have it and intending to convey such impression. If damage ensue, this makes an actionable fraudulent representation. *Marsh v. Falker*, 40 N. Y. 562; *Meyer v. Amidon*, 45 *Id.* 169."

In *Knappen v. Freeman*, 47 Minn. 491; 50 N. W. Rep. 533, the representations were that, "the land was high and rolling, covered with a growth of scrub oak, and good farming land suitable for cultivation." The court said in the *syllabus*: "When a party in making a contract makes an affirmation *positive in form*, it is to be taken *as made as of his own knowledge*, and not as

upon information or belief." And the opinion of Ch. J. GILFILLAN added: "The representations  *  *  * were positive in form, not as upon opinion or belief or as upon information. The defendant had a right to suppose they were made to him as upon knowledge of the facts. An unqualified affirmation amounts to an affirmation as of one's own knowledge. Where one makes, as of his own knowledge, a false representation, not knowing whether it was true or false, it is a fraud as much as though he knew it to be false." *Haven v. Neal,* 43 Minn. 315; *Bullitt v. Farrar,* 42 Minn. 8. See, also, to the same effect and for a collection of the authorities, the recent case of *Borders v. Kattleman,* by the supreme court of Illinois, 31 N. E. Rep. 19.

When facts are admitted by the pleadings and are uncontroverted in the evidence, there is no error in assuming their truth for the purposes of instructing the jury. We find no error in the instruction as applied to the facts of this case, and it follows that the court, having given this instruction, committed no error in refusing defendant's fourth instruction.

Nor was there any error in refusing defendant's instruction number 2 in the nature of a demurrer to the evidence. There was sufficient evidence to sustain the verdict.

Instructions 3, 6, 9 and 11 were properly refused because there was no evidence that defendant was acting as agent of the Fairmont Bank but as already said, if he was, it would not excuse him from his own deceit or fraud.

It is next assigned as error that the court erred in not receiving testimony that the makers of these notes had promptly paid other and different notes negotiated by defendant. This testimony was immaterial and irrelevant for two reasons: *First.* The statement in the circular of April 21, 1888, respecting the makers of

the paper sold to respondents, that they were "always and reliably prompt" was not relied upon as the basis for recovery in the court below. The question as to the truth or falsity of this allegation was not submitted to the jury by the trial court. The fact that these parties may have been prompt did not in any way tend to prove the truth of appellant's statements of fact, upon the untruth of which alone the trial court, by its instruction, permitted a recovery. Hence the testimony as to whether these parties had been prompt in the payment of other obligations was not material. *Second.* The offer was not to prove *that these makers* had paid the paper; it was simply to prove that other paper which these parties had made had at maturity been paid to the purchasers from Abell. Respecting this offer, the following colloquy appears:

"*By the Court:* Do you offer to show that Walters himself paid these notes? *Mr. Scammon:* They were promptly paid when due. I do not know who paid them." And this was defendant's evidence also. "They were negotiated by me and paid when due." "I do not know whether paid by the makers or not."

Nor was there any error in excluding E. L. Martin's evidence of the payment of a note by a conveyance of land. The court ruled that if the defendant could show that Martin had settled his note it was competent, but Martin did not testify that he had paid plaintiff, or made them a conveyance. He testified to a conveyance of the land to the Fairmont Bank long prior to the maturity of the note in question in this suit. This was in no way binding on plaintiffs. Moreover Martin testified his conveyance was to settle a note on which he was never sued. It was very clear that it was not this note, because he was sued on it, made no such defense and execution was returned "*nulla bona.*"

Defendant complains that the court permitted plaintiffs to show the Fairmont Bank was insolvent, thus contradicting a statement not made by defendant. This is a misapprehension of the purpose of the evidence admitted. It was necessary, for the plaintiffs to recover at all, to show that the bank was an indorser on their notes, was insolvent when the notes fell due, thus giving a reason why they were damaged. It was most clearly competent to this extent and for this purpose; but there was no error in refusing to go into the truth of the bank statement that was sent with the circular. This action was not based upon any falsity in that statement and it was irrelevant and incompetent.

Finally defendant renews the point that the court erred in not permitting him to show what efforts he made to ascertain the real condition of the Fairmont bank and the letter of the bank's correspondent at Omaha. But we have already indicated that it was not what efforts defendant made in that respect, nor his good faith in so doing. The difficulty with him is that he only had information, and instead of representing that he had such information, he *chose rather to assert it as a fact as of his own personal knowledge in a way to carry the conviction to plaintiffs that he knew what he was asserting.* Had he candidly stated that he was merely the broker of the bank; that his information was that the parties were of the standing he represented, he would have stood in a far different attitude in this court and before the jury. The evidence offered constituted no defense. We find no material error in any of the evidence admitted and the judgment is affirmed. All of this division concur.