## MONTICELLO BANK v. BOSTWICK et al.

### (Circuit Court, D. Nebraska. January 7, 1896.)

PRINCIPAL AND AGENT—LIABILITY OF AGENT—SALE OF COMMERCIAL PAPER.

Defendants, who were note brokers at Omaha, and who had done business as such with the plaintiff bank in Iowa, sent to plaintiff by mail a list of commercial paper offered for sale, including a note described as made by seven persons jointly to the order of one B., and indorsed by B. and another. The list sent plaintiff was headed by defendants' business card as brokers, and it contained sundry items of information about the parties to the note, purporting to be the result of inquiries as to their solvency and standing, and indicating that the same were good. Plaintiff purchased the note, and, by defendants' directions, remitted the sum paid therefor to a bank in Chicago. Defendants received from such sum only their commission for selling the note, the balance being paid to B., for whom they sold it. It afterwards proved that all the signatures on the note except that of B. were forgeries, and that B., although at the time of the sale of the note reputed to be solvent, was in fact insolvent, and wholly worthless. Plaintiff sued defendants to recover the amount paid for the note on an alleged warranty of genuineness. *Held,* that there was nothing in the note or in the circumstances of the transaction between plaintiff and defendants to justify an assumption that defendants had any interest in or ownership of the note, but, on the contrary, that the plaintiff bank must have known that it was taking title as the indorsee of B., and that defendants were acting as brokers only, and, accordingly, that defendants, having acted only as agents of a disclosed principal, could not be held personally liable for the note.

## Submitted on special findings of fact returned by jury, as follows:

### The Monticello Bank vs. Bostwick and Dixon, Copartners.

We, the jury in the above case, by the direction of the court, and with the consent of the parties hereto, make and return a special verdict in said case upon the facts, finding as follows:

(1) The plaintiff is a banking corporation created under the laws of the state of Iowa, at the ·town of Monticello, Jones county, Iowa, and was such in June, 1892.

(2) The defendants are citizens of Nebraska, residing at Omaha, Nebraska, and engaged in business as a firm as note brokers, and were so engaged in the year 1892, and prior thereto.

(3) That for some time previous to June, 1892, the defendants had dealt with the plaintiff bank, the usual course of business being to send to the bank a printed circular filled out with the names of parties to paper offered for sale, with the amounts thereof, and statements intended to show the general nature of the paper offered; that the dealings between the parties up to June, 1892, covered several transactions of sales of paper, amounting in the aggregate to about $20,000.

(4) That on or about the —— day of June, 1892, the defendant sent by mail to the plaintiff, in the usual course of defendant's business, a written communication reading as follows:

"Bostwick & Dixon, Brokers, Omaha, Neb.

"Bonds, Warrants, Bank Stocks, and Commercial Paper. Room 11, Chamber of Commerce.

"Reference: Bank of Commerce, Omaha, Neb.
"The National Bank, Mattoon, Ill.

"List of Paper Offered, Subject to Previous Sale or Withdrawal.

"Names offered have been investigated and found responsible.
"Please order the number wanted by wire.
"On request will hold for investigation when possible.

"June Series.                                                    June 24, 1892.
"Joint Note—Nine Good Farmers and Others.
"No. 29—$3,000—Six months at 7% discount.
"Payable at Council Bluffs, Iowa.

F. M. Bilger (Refers to Citizens' State Bank) Oakland, Iowa.

J. H. Lewis (Refers to Harlan Bank) Harlan, Iowa.

J. M. Malick (Refers to Shelby County Bank) Harlan, Iowa.

Caleb Smith (Refers to Shelby County Bank) Harlan, Iowa.

Benj. Piefer (Refers to Shelby County Bank) Harlan, Iowa.

George Hayward (Refers to Shelby County Bank) Harlan, Iowa.

Mrs. A. F. Cosgrove, Council Bluffs, Iowa.

F. M. Bilger is a good farmer, owning 200 or more acres of land at or near Oakland, Iowa, and considered worth $10,000 to $12,000, reported by good authority to be out of debt, and a good and reliable man.

J. H. Lewis is quite a prominent man of Shelby county, and a prosperous farmer and stock man; has been county treasurer; and considered worth near or quite $20,000, and good for all obligations he makes; also honorable and prompt on business matters.

Messrs. Malick, Smith, Piefer, and Hayward are farmers, reliably reported worth $8,000 to $15,000 each. They own their farms, are practically out of debt, and prudent, industrious, and prosperous. A banker, who was inquired of, says, 'All own good farms, and are well fixed.'

Mrs. A. F. Cosgrove is considered worth $8,000 to $10,000, consisting in part of improved farm lands; balance, money at interest.

Payable to and indorsed by W. W. Bilger, Council Bluffs, Iowa.

Also indorsed by W. C. Acker, late of Harlan, Iowa, now of Atlantic City, Iowa.

W. W. Bilger is considered worth several thousand dollars in Council Bluffs property, but his worth is not definitely estimated.

He is an active, energetic man, and gives close attention to all business matters.

W. C. Acker is a farmer, worth $5,000 or more, and, like other names on this paper, considered honorable and reliable.

This paper is made by responsible names, all of whom are prudent and honorable, conservative in making obligations, and authentically reported prompt in meeting them. We believe it good and desirable. "

(5) That the plaintiff bank, upon due receipt of the foregoing communication, determined to purchase the note thus offered it, and thereupon, on the 27th day of June, 1892, wired defendants their acceptance of the offer.

(6) That upon receipt of the telegram from the plaintiff bank the defendants procured the note from W. W. Bilger, who then indorsed it, and forwarded the same to the plaintiff bank, by letter, the same reading as follows:

"Memorandum:

"Bostwick & Nixon,

"Commercial Paper, Warrants. Bonds, Bank Notes.

"Omaha, Neb., June 27th, 1892.

"Sold to Monticello Bank, Monticello, Ia., following described contract:
"Made or accepted by
"W. W. Bilger, J. H. Louis, J. M. Malick, F. M. Bilger, Benj. Piefer,
"Caleb Smith, George Hayward, & Adelia F. Cosgrove.
"Indorsed or secured by
"W. C. Acker and W. W. Bilger.
"Payable at
"First National Bank, Council Bluffs, Ia., with 8% interest after date.
"Dated June 13-92.   Due Decem. 16-92.
"Discounted from June 28-92.                              Amount  $3,000 00
                                                                  Int.
171 days at 7%.............................. $104  47             124 00
1 day's transit of collection..................
Collection, 1-10 of 1%...................... 3  13               107 60
                                                                 ————
Net proceeds ............................................. $3,016 40

"Please discount above-described item at 7%.   Remit proceeds to Commercial National Bank, Chicago, Ill., for credit National Bank of Commerce, this city, our use; and wire us amount when you remit.
"Respectfully,                                      Bostwick & Nixon."

(7) That upon receipt of the note so forwarded by the defendants, the plaintiff bank paid, as directed, the agreed price, to wit, the sum of $3,016.40; paid June 28th, 1892.

(8) That in making such purchase the plaintiff bank had no other information concerning said note, its validity, value, or ownership, other than that contained in the written communications received from the defendants and as set forth in findings 4 and 6 hereof; and that plaintiff bank relied thereon in making such purchase.

(9) That in fact none of the names signed to or upon said note were genuine, except that of W. W. Bilger; all the others named being forged and false.

(10) That on June, 1892, W. W. Bilger was apparently the owner of some real property and of equities therein in Council Bluffs, Iowa, and was an active, energetic man, and might have been deemed to have property of the then supposed value of several thousand dollars, but, as it afterwards appeared, he was then probably insolvent, and has since disappeared, being wholly worthless, and nothing can be now, or could have been, collected of him since November, 1892.

(11) That in forwarding and offering the note in question for sale to the plaintiff bank and in selling the same the defendants acted in good faith, believing the signatures to the notes to be genuine.   That before selling the same, the defendants made reasonable inquiry as to the solvency and responsibility of the parties whose names appear upon said note, but did not make inquiry with respect to the genuineness of the signatures thereto.

(12) That the defendants were not the owners of said note when the same was offered for sale and sold to the plaintiff bank as above stated, nor did defendants receive the money paid therefor for their own use, but accounted for and paid over to W. W. Bilger the whole amount received from the plaintiff bank, except the sum of $30.00, paid them as commissions for making the sale as brokers.

And the jury further find that if, upon the foregoing findings of fact, the law is held by the court to be in favor of the plaintiff, then the jury find as their general verdict in favor of the plaintiff and against the defendants,

and assess the damages at the sum of $3,016.40, wth interest from June 28, 1892, at seven per cent., making the sum of ——.

Geo. L. Dennis, Foreman.

But if, upon the foregoing facts, the court holds the law to be in favor of defendants, then the jury find as their general verdict in favor of defendants. Geo. L. Dennis, Foreman.

M. W. Herick and Brome, Burnette & Jones, for plaintiff.

F. B. Tiffany and Wharton & Baird, for defendants.

SHIRAS, District Judge. Counsel for the adversary parties in this case are agreed upon the general proposition that in sales of personal property there is an implied warranty of title upon part of the vendor, and that this implied warranty covers cases of sales of notes or other commercial paper wherein it appears that the names attached to the paper are not genuine, but are false and forged. In other words, one who offers for sale and sells commercial paper, purporting to be the obligation of A., is held to warrant the genuineness of the paper, and, if it proves that the paper, though upon its face it appears to be what it purports to be, is not such in fact, but in truth is false and forged, the vendor is liable to the purchaser, although he may have acted in perfect good faith. The question upon which the parties disagree in this case is whether the obligation created by this implied warranty can be enforced against any one except the one in whose interest the sale was in fact made, and who received the consideration price paid by the purchaser. On part of the plaintiff the rule is claimed to be "that, where a person, in executing a contract, describes himself as agent, without disclosing his principal, the contract becomes the personal obligation of the maker, and no one else"; and, further, that an agent, auctioneer, or broker who deals in his own name without disclosing the name of his principal will be bound, not only by any express contract he may make, but also by all the contracts which the law implies from the circumstances; and in support of these propositions counsel cite and rely upon the cases of Wing v. Glick, 56 Iowa, 473, 9 N. W. 384; Insurance Co. v. Stratton, 59 Iowa, 697, 13 N. W. 763; Dumont v. Williamson, 18 Ohio St. 515; Merriam v. Wolcott, 3 Allen, 258; Canal Bank v. Bank of Albany, 1 Hill, 287; Mills v. Hunt, 20 Wend. 431; Hamlin v. Abell (Mo. Sup.) 25 S. W. 516. It is further claimed that if the agent sells in his own name it is immaterial whether he discloses his principal or not, upon the theory that evidence is not admissible to discharge an undisclosed principal. I shall not attempt to discuss the several authorities cited by counsel for the respective parties, nor to reconcile the real or apparent diversity found therein, for, in my judgment, the general rules of law applicable to this case are to be found in the decisions of the supreme court of the United States. Thus in Whitney v. Wyman, 101 U. S. 392, it is said:

"Where the question of agency in making a contract arises, there is a broad line of distinction between instruments under seal and stipulations in writing not under seal, or by parol. In the former case the contract must be in the name of the principal, must be under seal, and must purport to be his deed, and not the deed of the agent covenanting for him. Stanton v.

Camp, 4 Barb. 274. In the latter cases the question is always one of intent; and the court, being untrammeled by any other consideration, is bound to give it effect. As the meaning of the lawmaker is the law, so the meaning of the contracting parties is the agreement. Words are merely the symbols they employ to manifest their purpose that it may be carried into execution. If the contract be unsealed, and the meaning clear, it matters not how it is phrased, nor how it is signed, whether by the agent for the principal or with the name of the principal by the agent or otherwise. The intent developed is alone material, and when that is ascertained it is conclusive. Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so."

To the same effect is the ruling in Post v. Pearson, 108 U. S. 418, 2 Sup. Ct. 799.

In Metcalf v. Williams, 104 U. S. 93–98, after a full discussion of a number of authorities, the court held that:

"The ordinary rule undoubtedly is, that if a person merely adds to the signature of his name the word 'agent,' 'trustee,' 'treasurer,' etc., without disclosing his principal, he is personally bound. The appendix is regarded as a mere descriptio personæ. It does not of itself make third persons chargeable with notice of any representative relation of the signer. But if he be in fact a mere agent, trustee, or officer of some principal, and is in the habit of expressing in that way his representative character in his dealings with a particular party, who recognizes him in that character, it would be contrary to justice and truth to construe the documents thus made and used as his personal obligations, contrary to the intent of the parties."

As the contract in the case now before the court is not under seal, it is permissible, under the rules recognized in these decisions of the supreme court, to show by evidence outside the letters passing between the parties the real relation of the parties to the transaction, and the course of dealing between plaintiff and the defendants, in order to ascertain what obligations, either express or implied, were created on part of the defendants to the plaintiff with relation to the forged paper in question. The facts, as found by the jury, show that the business of the defendants was that of bill brokers; that in that capacity they had dealings with the plaintiff bank previous to the sale of the forged note; that they were not the owners of the forged note, but sold it on behalf of W. W. Bilger; that the defendants, beyond their commission of $30, received no benefit from the sale, the money received being paid over to W. W. Bilger. When, therefore, the defendants, in the usual course of their business, with which the plaintiff must have had a reasonable familiarity, addressed to the plaintiff bank the written communication dated June 24, 1892, headed: "Bostwick & Nixon, Brokers, Omaha, Neb. Bonds, Warrants, Bank Stocks, and Commercial Paper,"— the only reasonable inference is that the plaintiff dealt with them in their capacity as brokers, and there is nothing in this communication, viewed in the light of the facts known to the plaintiff, which would justify the bank in assuming that the paper offered was the property of the brokers. The paper offered was stated to be the joint note of seven persons, naming them, payable to W. W. Bilger, and indorsed by him. The note did not have upon it the names of the defendants in any capacity, either as makers, payees, indorsers, or guarantors. There was nothing upon the note, therefore, upon

which to base an assumption that the defendants had any interest in or ownership of the note, and there is nothing in the written proposition of June 24, 1892, which so states, but, on the contrary, the form of that communication tends strongly to show that in dealing with the paper the defendants acted only in the capacity of brokers, and the jury have found such to be the fact.

Can it be fairly said that the defendants did not disclose the name of their principal, so that the plaintiff may invoke the rule that auctioneers, brokers, and others acting in fact in a representative capacity, but on behalf of an undisclosed principal, may be held bound by the contracts they have entered into in favor of third parties who have dealt with them not knowing who the real party in interest might be? What was offered for sale by the defendants in their capacity as brokers was a promissory note, payable to the order of W. W. Bilger, and by him indorsed. When this note was thus offered for sale to the plaintiff bank, by parties to the bank known to be engaged in the business of negotiating the sale of commercial paper for third parties, what other inference could be fairly drawn by the bank than that the paper so offered for sale was the property of the payee named in the note? If bill brokers offer for sale paper payable to A. B., and in fact owned by him, can it be said that they are acting for an undisclosed principal? On the face of the paper A. B. would appear to be the owner, and such would be the reasonable conclusion to be declared from the facts thus made to appear. In the case at bar, when the paper was offered for sale to the bank, and when it was delivered after the contract of purchase had been closed, it is clear that the bank must have known that it took title to the note as the indorsee of W. W. Bilger, the payee. Knowing from whom it thus took title, there is nothing in the facts that will sustain the contention that the bank supposed or had the right to infer that the defendants were the owners of the note. Their names do not appear on the note. The communication offering the note for sale showed upon its face that the defendants were offering the note in the usual way of business as note brokers, and hence it fairly appears, in the language of the supreme court in Whitney v. Wyman, supra, that the principal was disclosed, and the defendants were known to be acting as agents, and hence cannot be made personally liable unless they had agreed to be so held. As the defendants did not, in fact, retain the money paid by the bank, but paid it over, in due course of business, to W. W. Bilger, there is no ground for implying a promise or obligation to repay the money upon the theory that they had obtained from the bank a sum of money under circumstances which made it inequitable for them to retain it; and therefore the case stands as one in which, to entitle the bank to recover, it must appear that the defendants had agreed to be bound personally, and, as it does not appear that such an agreement was made by them, it must be held that, upon the facts as found by the jury, the law is with the defendants, and therefore the verdict and judgment must be in their favor.