THE MERCHANTS' NATIONAL BANK OF ST. LOUIS, Plaintiff in Error, v. LUKE SELLS, Defendant in Error.

### November 14, 1876.

1. The M. N. Bank received a dispatch from another bank requesting the payment of $500 to J. H. B. A person called upon L. S., introduced himself as J. H. B., and asked to be identified at the M. N. Bank. L. S. recognized him as a person whom he had met at W. as an employee of the mercantile house of M. & W., but did not recollect his name, and this person exhibited to him what purported to be a dispatch addressed to J. H. B., which stated that the M. N. Bank would pay him $500; whereupon L. S. sent his book-keeper to the bank to identify him as J. H. B. The bank paid him the money. He was not J. H. B. L. S. had no interest in the matter. The M. N. Bank sued L. S. for the recovery of the $500. *Held*, that upon these facts the bank was not entitled to recover of L. S.

2. If a person states what he knows to be untrue, or makes an assertion as to the truth or falsity of which he knows nothing whatever, and so induces another to act to his prejudice, a fraud, in law, is committed; but, though the representation made is false, if the person making it had reason to, and did, believe it true, he has incurred no liability, for he has been guilty of no deceit, and the gist of the action is fraud.

ERROR to St. Louis Circuit Court.

*Affirmed.*

*Noble & Orrick*, for plaintiff in error, cited: Watson v. McD., 19 Wend. 557; Foote v. Newland, 21 Wend. 94; 42 Barb. 18; 47 Barb. 206; Barker v. Scudder, 56 Mo. 272; 2 Allen, 490; 46 Mo. 374; Bennett v. Johnson, 21 N. Y. 238; Harding v. Randall, 15 Me. 332; Hammett v.

Emmerson, 27 Me. 308; Cabot v. Christie, 42 Vt. 121; Fisher v. Mellon, 103 Mass. 503; Sharpe v. Mayor of New York, 40 Barb. 257; Litchfield v. Hutchinson, 117 Mass. 195; Reeves v. Larkin, 19 Mo. 192; Morgan v. Cox, 22 Mo. 373; DeGrex v. Small, 321; Home v. Bigland, Law Rep. 9 Ex. 724; Ormrod v. Huth, 14 Mee. & W. 651; Haycraft v. Creasy, 2 East, 92.

*Hitchcock, Lubke & Player*, for defendant in error, cited: Wag. Stat. 657, sec. 7; Taylor v. Zepp, 14 Mo. 482; Newman v. Hook, 37 Mo. 213; Dazzell v. Odell, 3 Hill, 219; Add. on Torts, 4th Eng. ed., 1005, 1006; Hill on Torts, 34, sec. 28; Russell v. Clark, 7 Cranch, 70; Lord v. Goddard, 13 How. 198; Stone v. Denny, 4 Metc. 151; Ormrod v. Huth, 14 Mee. & W. 651; Haycraft v. Creasy, 2 East, 92; Mahurin v. Harding, 8 N. H. 131, and cases cited; Hearne v. Waterhouse, 39 Mo. 97.

BAKEWELL, J.; delivered the opinion of the court.

This cause comes to this court on writ of error, sued out by the Merchants' National Bank, seeking a reversal of the judgment rendered in favor of defendant Sells, upon an agreed case under the statute for the submission of controversies without action. The agreed case is as follows:

"The plaintiff, being then and now still a corporation, duly incorporated under the National Bank Act of the United States, on the 19th day of May, A. D. 1874, at its banking-house in the city of St. Louis, received of the Fourth National Bank of Nashville, Tennessee, a genuine dispatch, of which the following is a true copy:

"'R. Eagle, Cash. Mchts. Nat. Bk., St. Louis:

"'Pay J. H. Britton, Southern Hotel, five hundred dollars and ch'ge our acc.

"'JNO. PORTERFIELD, *Cash.*'

"After the receipt by plaintiff of this dispatch, and on the 19th day of May, A. D. 1874, a person claiming to be the J. H. Britton named in said dispatch called at said banking-

house, and requested of the teller payment of the $500, at the same time exhibiting a telegram purporting to have been sent to J. H. Britton by said Fourth National Bank of Nashville, Tennessee, and stating in substance that plaintiff would pay him $500. In reply to this request the teller informed the person so claiming to be J. H. Britton, that he could get the money as soon as he was properly identified, and asked him whether he was not acquainted with some one in the city of St. Louis; to which the person answered yes, that he thought Sells & Co. might identify him; whereupon he was told by the teller that identification by the house of Sells & Co. would be satisfactory. The person then left the bank and went to defendant's store, and found defendant, Luke Sells, in his office. Defendant was then, and now still is, engaged in the produce and commission business, in the city of St. Louis, under the name of Sells & Co. Upon meeting defendant, said person introduced himself, and defendant recognized him as a person whom he had met at Winterville, Mississippi, as an employee in the house of Moor & Winters, in the spring of 1873, but, being unable to recollect his name, the person showed him the telegram above referred to, and requested defendant to identify him at the plaintiff's banking-house. Defendant had no interest whatever in said person, nor was he in any manner concerned in the $500 in question, but, believing said person to be the J. H. Britton, defendant requested his book-keeper, Wm. H. Goodin, to go with said person to the plaintiff's banking-house to identify said person. Thereupon said person and said Goodin went to plaintiff's banking-house, and said Goodin stated to plaintiff's teller that he had been sent by Mr. Sells, the defendant, to state: ' This is Mr. J. H. Britton; it is all right; he knows him.' Relying upon this identification, the plaintiff paid said person so identified the $500, receiving from said person a draft, of which the following is a true copy, with the indorsements thereon

" ' $500.                    *St. Louis, 19th May, 1874.*

" 'At sight, pay to the order of Mch'ts National Bank, five hundred dollars, value received.

" 'JAS. H. BRITTON.

" ' *To Fourth Natn'l Bank, Nashville, Tenn.*'

" Endorsed, ' Pay Jno. Porterfield, Cash., or order.'

Which draft was executed by said person, immediately after said identification, in the presence of said teller.

" J. H. Britton was a stranger to, and not a customer of, the plaintiff.   Upon presentation of this draft it was dishonored, and it turned out that the said person was not J. H. Britton, and not entitled to said money, but that he was another and different person, bearing no such name.   He having disappeared, the $500 was lost to plaintiff, and plaintiff, on the 29th day of May, 1874, notified defendant of this loss, and demanded payment of the $500 from him, which defendant refused.   Plaintiff, upon these facts, claims judgment against defendant for said $500 and interest thereon at 6 per cent. per annum from the said 29th day of May, 1874.   Defendant claims that, having acted in good faith, executed no guaranty, and received no compensation or reward in the premises, he is not liable upon the case so stated."

The St. Louis Circuit Court, on May, 17, 1875, heard and took this controversy under advisement until June 25, 1875, following, and then declared the law to be " that, upon the facts as set forth in the agreement of the parties constituting this case, the defendant is not legally liable to plaintiff, and defendant is entitled to a judgment in his favor ;" and judgment was rendered accordingly for the defendant.

Plaintiff having saved all exceptions, the cause is brought here by writ of error.

It is clear that the defendant here made no express promise that he would make good the representation of this pretended J. H. Britton that he was the person named in the

dispatch to the bank. He is not liable as guarantor in the sense that he undertook to make good any agreement of the pretended Britton; such a contract is within the statute of frauds. He is not liable on a verbal contract as a promisor, for it cannot be said that in consideration that the bank would advance $500 to this impostor he expressly agreed to refund the money to the bank if he should turn out not to be J. H. Britton. If there were any such understanding between Sells and the bank, at the time, it cannot be doubted that Sells would have been required to indorse the draft which the bank required the impostor to make at the time he received the money.

It is said that there is an estoppel *in pais*. What is it that Mr. Sells is estopped to deny? It is the bank that asserts that this impostor was not J. H. Britton. Mr. Sells said he was Britton. It is clear that Mr. Sells would be glad to maintain the entire truth of this statement; unhappily this cannot be done.

If the bank has any ground of action against Sells, arising out of the transaction detailed in the agreed statement, it can only be an action for deceit by false and fraudulent representations. In such an action a *scienter* must be alleged. The petition would not state facts sufficient to constitute a cause of action unless it said that the defendant made certain representations knowing them to be false. On the trial it would be sufficient to show, in that respect, either that the defendant knew that this impostor was not Britton, or else that the defendant knew nothing whatever on the subject. Either state of facts would sustain the allegation, because it would be as much a falsehood and a fraud to induce another to pay out money on a statement that a man known to the speaker to be John Smith is John Brown, as to say that a man is named John Brown whom the speaker never saw before, and as to whose name he has no knowledge or information of any sort whatever. It is quite clear that, if a total stranger should meet a merchant and say,

" My name is John Brown ; I wish to be identified in bank,"
the falsehood would be as complete, if the merchant should
say to the teller, " I know this man to be John Brown,"
as if the merchant actually knew him to be John Smith.
But, if upon the trial it should appear that the defendant
had himself been imposed upon, that he had some reason,
though an insufficient one, to believe the stranger to be
John Brown, the *scienter* would not be proved, and plaintiff
could not recover.   The mere fact that the stranger said
he was John Brown, in the case supposed, would not, of
course, be a sufficient reason to warrant an introduction to
the teller of a bank, because, if the stranger's word was to
be taken in the matter, it might as well be given directly
to the teller as to the merchant who is asked to introduce
him.   But, if from any circumstances the merchant who
introduces the stranger, acting in good faith, believes in
truth that the person whom he introduces bears the name
by which he is introduced, there is no deceit and no legal or
moral fraud in the case.   There may be want of caution,
and there is also some want of caution on the part of the
bank officer who pays money to a stranger, on the intro-
duction of a third party, without inquiring as to the means
of knowledge on the part of the person by whom the stran-
ger is introduced.

It is, undoubtedly, the doctrine of courts of equity that a
misrepresentation may constitute a fraud against the effects
of which they will relieve.   But the case must be one in
which one party has intentionally misled another to his
injury, and then if the misrepresentation be material — that
is, if it has furnished a motive for the acts of the other
party, if it be of a matter as to which one party is presumed
to rely on the statements of the other, and the one deceived
must have been misled by the statement, to his injury.
When a case arises presenting these three features, equity
will relieve ; and, so far as relief is concerned, it is wholly
immaterial whether the party misrepresenting the fact knew

it to be false, or made the assertion not knowing at the time whether it was false or true. And if a person states what he knows to be untrue, or makes an assertion as to the truth or falsity of which he knows nothing whatever, and so induces another to act to his prejudice, a fraud in law is committed. But, though the representation made is false, yet if the defendant had reason to believe it true, he has incurred no liability, for he has been guilty of no deceit, and the gist of the action is fraud. A false representation made by the seller, unless fraudulently made — unless it be a warranty — will not avoid a sale ; it would be a hard rule to say that it makes one absolutely liable, though made in perfect good faith by a person who has no interest of his own to serve in making it. Representation differs from warranty in this : one is a contract ; the other must be honestly made, and believed to be true at the time it is made. When this is the case, even the vendor of goods is not liable for a false statement made to the vendee.

The principle involved in this case has been much discussed for a hundred years, both in England and America. It has been thoroughly canvassed by the ablest judges during that period ; and, though there was some slight dissension at first, the question must now, we think, be taken to be settled, and settled altogether in the sense indicated by what we have already said.

The case of *Pasley* v. *Freeman*, 3 Durnf. & E. 51, was decided in 1789, and it was determined then that where a party makes a false representation of a matter inquired of him, in consequence of which the other is damnified, he shall answer in damages where there has been a design to do injury by the falsehood ; for the case goes no further than that. The case of *Eyre* v. *Dunsford*, 1 East, 318 (1800), followed upon the same grounds, and it is expressly decided there that fraud is the gist of the action.

Then came the case of *Haycraft* v. *Creasy*, 2 East, 92. It was tried before Lord Kenyon, and a verdict was ren-

dered for the plaintiff, but, on a rule being obtained to show cause why a new trial should be had, upon argument before all the judges, the verdict was set aside; Lord Kenyon apparently dissenting, but expressing doubt, and a desire that the case could be " put in such a shape as to be carried to the *dernier ressort.*" The facts were these: A Miss Robertson gave herself out as having suddenly inherited a vast fortune. She was an adroit swindler, and for a time obtained great credit and lived in magnificent style. Defendant had himself been duped by her and had lent her £2,000. While Miss Robertson was fitting up her house near London (she had formerly been a school-teacher in another town), application was made in her behalf, by defendant, to plaintiff's son, who carried on the iron-monger business in his father's absence, defendant stating that he had recommended Miss Robertson to come to plaintiff for such articles as she might want in the way of his business. The plaintiff's son inquired as to her responsibility, she being an entire stranger to him and his father, to which defendant answered: " Your father may credit her with perfect safety; for I know, *of my own knowledge*, she has been left a considerable fortune lately by her mother, and that she is in daily expectation of a much greater at the death of her grandfather, who has been bedridden a considerable time." The defendant afterwards came with Miss Robertson and her companion (also known to defendant for many years as keeper of the same school), and they ordered articles to a large amount. Plaintiff's son swore that he dealt with them entirely on defendant's information. The order being large, he again asked defendant if he was certain as to the representation he had made; who again answered with the same certainty, and never expressed any doubt. The son thereupon wrote to plaintiff, and, in consequence of the answer he received, applied to his uncle to see defendant on the business. Defendant repeated to the uncle his assertion that Miss Robertson was a person of

great fortune and greater expectations, and was related to certain persons of rank whom he named, and added: "I can positively assure you, of my own knowledge, that you may credit Miss Robertson to any amount with perfect safety." Various other assertions to the like effect were proved; but, particularly, on one occasion, after representations of this sort had been made to the plaintiff's brother, the latter said to defendant: "I hope you do not inform me upon *bare hearsay*; but do you know the fact yourself?" The defendant answered: "Friend Haycraft, I *know* that your brother may trust Miss Robertson with perfect safety to any amount."

Lord Kenyon, on the motion for a new trial, said that he had been unable to distinguish this case from *Pasley* v. *Freeman*, in which he had sat, and, though not then so well versed in the critical forms of action, had had the valuable assistance of three very able judges, from one of whom, now his colleague, he had the misfortune to differ; that it is repugnant to all religious, and moral, and social duties to make false representations to induce another to take measures to injure him; that he considered *Pasley* v. *Freeman* had been followed, and was of binding authority, and in point. "It is said," says Lord Kenyon, "that I imputed no fraud to this defendant on the trial. It is true I used no hard words, because the case did not call for them. It was enough to state that the case rested on this, that the defendant affirmed that to be true *within his own knowledge* which he did not know to be true. This is fraudulent; not, perhaps, in that sense which affixes the stain of moral turpitude on the mind of the party, but falling within the notion of moral fraud such as is presumed in all cases within the statute of frauds."

Gore, J., professes himself unable to comprehend on what ground *Pasley* v. *Freeman* was decided; but says he is bound by it, but that it is not in point. That case was founded in fraud. Defendant in this case was a dupe to

appearances. Evidence that a man is a dupe is not evidence that he is an intentional deceiver.

Lawrence, J., says the verdict might have been supported if the case had gone to the jury on the ground of fraud; there might have been some evidence to support the verdict. But it went to them on the ground that, if the representations made by the defendant were false, he was answerable, though a dupe himself. In order to support the action the representation must be made *malo animo*.

LeBlanc, J., says that this case differs from *Pasley* v. *Freeman* and *Eyre* v. *Dunsford* in that there is here no question of fraud; or, at least, that question was not clearly left to the jury. And he thinks there was no fraud here. What the defendant said was not true, but there was no intention to deceive. It was a case where defendant, giving credit to arts practiced on him, conceived that to be knowledge which was mere hearsay, and made a false statement without intention to deceive. Had defendant had anything to gain by it, as in *Eyre* v. *Dunsford*, a false statement might satisfy a jury of fraudulent intent.

*Ormrod* v. *Huth*, 14 Mee. & W. 651, was decided in 1847, and the question is again examined, the briefs of counsel being quite elaborate. It was an action for false representation alleged to have been made by defendants, on the sale of certain cotton to plaintiffs, that the cotton was of the same quality exhibited. On the trial the jury were instructed that the defendants were entitled to a verdict if they acted in good faith and without fraudulent purpose. This was held to be right, and the court says: "If a representation be honestly made, and believed at the time to be true by the party making it, though not true in fact, this does not amount to fraud in law, and the representation does not furnish a ground of action." And this rule, says Tindal, C. J., seems to be supported clearly by all the decisions.

So it was very early decided in this country, in *Russel*

v. *Cranch's Estate*, 7 Cranch, 70 (1812), Chief Justice Marshall delivering the opinion of the court, that the misrepresentation of the credit of a mercantile house, made under a mistake of fact, without any interest or fraudulent intention, will not sustain an action although the plaintiff may have suffered damage by reason of such misrepresentation.

And in *Lord* v. *Goddard*, 13 How. 198, it is decided that, where an action is brought for giving a letter of recommendation whereby another gave credit and sustained loss, though the representation be entirely untrue, there can be no recovery where there was no intention to deceive; and the court says that this is the well-settled doctrine in America since *Young* v. *Covell*, 8 Johns. 23, decided in 1811. "The gist of the action," says Justice Catron, "is fraud in the defendants and damage to the plaintiffs. Fraud means an intention to deceive."

We are referred by counsel for appellant to *Espy* v. *Bank of Cincinnati*, 18 Wall. 604, but we find nothing in that case that overrules what we regard as the received doctrine on this subject. It expressly decides that a bank will not be liable for a "raised" check because the paying teller of the drawer of the check, in answer to a question, may have said that the check was all right, although the check was "raised" or altered at the time it was submitted to the teller, and although it was taken on the faith of the teller's statement. We are also referred to a recent case in Massachusetts, *Litchfield* v. *Hutchinson*, 117 Mass. 195. But that was a case of a material misrepresentation in the sale of a horse, made by the seller, in regard to a matter within his own knowledge, and relied upon by the purchaser. It was clear fraud, and the defendant was benefited by his own gainful lie. The case is not like the one before us.

The defendant here was deceived himself, and under circumstances which furnished some palliation for what was

certainly an act of imprudence in an experienced business man. He had seen the impostor before under favorable circumstances, and had known him as respectably connected in business in another town. He had no suspicion in regard to him. When the swindler presented himself, defendant remembered his face, and the circumstances under which he had known him before, but he did not recall his name. But the impostor held in his hand a telegram addressed to him as J. H. Britton, and defendant, in good faith, thought that was his name, and told plaintiff that he was J. H. Britton. We are asked to say that he is liable to plaintiff for the loss that accrued to it in consequence of this misstatement; as a matter of law we do not think that he is; it being admitted that he had no personal interest in the matter, that he acted in good faith, and that he was himself deceived. The judgment of the Circuit Court is affirmed. All the judges concur.