WALSH v. MORSE, *Executrix, Appellant.*

1. **Practice**: DEMURRER. Where there is any testimony to support a cause of action, it should be left to the determination of the jury, and a demurrer to the evidence should not be sustained.

2. **Instruction.** It is not error to give an instruction when there is any evidence upon which to base it.

3. **Fraudulent Representations**: MISTAKE: SCIENTER. To support a personal action for fraudulent representations, it is not sufficient to show that the party making them did not know them to be true, and that they were, in fact, false; there must be fraud as distinguished from mere mistake. But, if the party state material facts, as of his own knowledge, of which he knows nothing whatever, and not as matter of opinion, such willful statement in ignorance of the truth is the same as the statement of a known falsehood, and will constitute a *scienter.*

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

REVERSED.

*Gage, Ladd & Small* for appellant.

Plaintiff's first instruction should not have been given, there being no evidence in the case that the notes of Case and Balis were taken as security. The second instruction is absolutely without evidence to support it. There is nothing in the record to show that Morse ever made any representations as to the pecuniary circumstances of Case or Balis. Plaintiff's third instruction is erroneous for several reasons. (1) There is no evidence that plaintiff had been deceived as to the solvency of Case and Balis. (2) There is no evidence that "Morse promised in writing that if the plaintiff would make efforts to collect from Case and Balis the notes, he, Morse, would pay the balance which could not be collected from them." Morse's liability had been voluntarily released, and no obligation existed upon which to found a promise to pay. *Greenbaum v. Elliott,* 60 Mo 25; *Valentine v. Foster,* 1 Met. (Mass.) 520; *Hale v. Rice,*

124 Mass. 292; Wharton on Cont., §§ 512, 513. (3) Even if Morse's promises to pay were made upon condition that "plaintiff would make efforts to collect," the performance of such condition would not constitute a valid consideration.

*J. W. Jenkins* for respondent.

The Case notes were received by respondent as security for the original indebtedness of Morse. And Morse promised repeatedly, both orally and in writing, to pay the balance of the money borrowed, which respondent should fail to collect from Case and Balis. The petition alleges, and the evidence shows, that representations were made by Morse, and relied upon by respondent, when the notes were received, which amounted to a warranty of their collectibility. *Carter v. Black,* 46 Mo. 384; *Hainey v. James,* 50 Mo. 316. And the liability of Morse for the breach of this warranty was a sufficient consideration for these promises. And the fact that respondent made efforts to collect the notes at Morse's request, also constitutes a sufficient consideration for the new promises.

NORTON, J.—Plaintiff's petition alleged, substantially that he loaned the defendant's testator the sum of $1,180, on the 12th day of December, 1873, for which the testator, Morse, executed his note to plaintiff, payable in one year; and to secure the payment of it, executed a mortgage on certain real estate. That afterwards, plaintiff becoming dissatisfied with the security, demanded other security. That the defendant in compliance with that demand, delivered to the plaintiff two promissory notes, executed by Theodore S. Case, and John R. Balis, for $300 and $500 respectively. That to induce plaintiff to accept the notes as security for the loan, the defendant, Morse, falsely and fraudulently represented to the plaintiff, that the notes were good; Case and Balis were men of large means, owning a large amount of property, out of which the

notes could be collected, and that they would be paid as soon as they became due. That plaintiff believing those statements, was thereby induced to surrender to the defendant his note, and accept the notes of Case and Balis for said loan. That the defendant's statements, as to the responsibility of Case and Balis, were false and fraudulent, and known by him to be such when he made them. That when the notes of Case and Balis became due, plaintiff brought suit on them, and obtained a judgment, and that at sundry times since that time, the defendant promised, verbally and in writing, to pay plaintiff whatever balance of the loan he should fail to collect from Case and Balis.

Defendant's answer was a general denial, and a special defense, admitting the fact of the loan of $1,180, and the making of the note, and alleging that afterward, in May, 1874, the defendant paid to the plaintiff a certain amount of money, and at the same time delivered to him two promissory notes, on which the said Case and Balis were parties; and that the said money was paid, and said notes were delivered by the defendant to the plaintiff, and the same were received by the plaintiff, in full satisfaction and payment of defendant's indebtedness on account of said loan and note first mentioned, and that said indebtedness was thereby extinguished; and that at the same time the plaintiff surrendered to the defendant, as cancelled and fully paid, the said note for $1,180. The reply was substantially a general denial. Before the trial the defendant, Morse, died, and the suit was revived in the name of his executrix.

On the trial there was a verdict and judgment for plaintiff, from which the defendant has appealed, and assigns for error the action of the trial court in giving and refusing instructions. At the close of the evidence the defendant asked the court to instruct the jury that under the pleadings and evidence plaintiff was not entitled to recover. This instruction was refused and the court among others gave the following for plaintiff:

1. If the jury believe from the evidence that the plaintiff accepted the notes of Case and Balis as security for the debt owing by L. V. Morse to him, then they will find for the plaintiff.

2. Even if the jury believe that the plaintiff received the Case and Balis notes in full payment of the balance due on the original indebtedness, yet if they further believe that the defendant represented to plaintiff that the said Case and Balis were wealthy men, owning a large amount of property over and above their indebtedness; that the said notes were perfectly good, and would certainly be paid when due; and if they find that plaintiff believed said statements of the defendant, and was thereby induced to accept said notes in payment of said indebtedness; and if the jury further believe that the said Case and Balis were at that time in failing circumstances, and the said notes were not and could not be collected of said Case and Balis then the jury will find for the plaintiff.

The first of the above instructions is objected to on the ground that there was no evidence on which to base it. The evidence shows that plaintiff, who was a section foreman on the Hannibal & St. Joseph railroad, loaned to Morse, who was the division superintendent on said road, the sum of $1,180 for which he took his note secured by mortgage on real estate in Kansas City; that plaintiff became dissatisfied with his security and on the 29th day of May, 1874, received a letter from Morse in which he stated: "I have a chance to sell part of my city property, and would like to pay some on my note you hold and give you other security on property I have. Come down and bring with you the papers in the morning. * * * I will pay part cash and give you all the security you want for the balance." It appears that on the next day after this letter, and in pursuance of the request it contained, the parties met together, when plaintiff entered satisfaction of the mortgage; defendant paid him $380 in cash and delivered to him two notes on Theo. S. Case; one for

$554, dated January 26, 1874, due one year after date and one of same date for $300, payable in six months and plaintiff surrendered the Morse note to him. It further appears that Case became a voluntary bankrupt in August, 1874; that the above notes were proved up by plaintiff against his estate which paid about six and one-fourth cents on the dollar. Reading the transaction which took place between the parties on the 30th of May, 1874, in the light of Morse's letter written on the 29th of May, 1874, in which he says his object was to pay part of his note and secure the balance, and in the light of the letters written by Morse subsequently to the transaction, in all of which he recognized his obligation to pay plaintiff and in one which he says, "when I took up my note and gave you his (Case's) notes and paid you the difference, I thought I was giving you the best kind of security," we are of the opinion that there was sufficient evidence to justify the court in submitting to the jury as it did in the first instruction, the question whether the Case notes were given and received only as security for, and not in payment of Morse's note. Whether the evidence was, or was not sufficient to rebut or overthrow the *prima facie* case of payment arising from the fact of the surrender of Morse's note to him by plaintiff, was for the jury to determine, and they might very well have found this issue for plaintiff on the letters of Morse read in evidence. For the reasons above given no error was committed either in giving plaintiff's first instruction, or in refusing to sustain defendant's demurrer to the evidence.

The objection to the second instruction is of a more serious nature. This instruction is based on the theory that although the Case notes may have been received in full payment of Morse's debt, yet if they were received on account of fraudulent representations made by Morse the verdict should be for plaintiff. The gist of an action grounded on fraudulent representations, is the fraud of defendant, and when it appears that a representation is made

which is known to be false at the time it is made, and the person to whom it is made relies upon it and is deceived to his injury an action lies against the party making it. The generally received doctrine now is that, in order to support a personal action for fraudulent representations, it is not sufficient to show that a party made statements which he did not know to be true and which were in fact false. There must be fraud as distinguished from mere mistake. It is not however always absolutely necessary that an actual falsehood should be uttered to render a party liable in an action for deceit; if he states material facts as of his own knowledge, and not as a mere matter of opinion, or a general assertion about a matter of which he has no knowledge whatever, this distinct willful statement, in ignorance of the truth, is the same as the statement of a known falsehood, and will constitute a *scienter*. *Dulaney v. Rogers*, 64 Mo. 201. The pleader in this case recognized the above doctrine in his petition by alleging that Morse knew the representations made by him were false, but the court in the instruction complained of ignored it, and authorized the jury to find for plaintiff without finding the truth of the matter averred in the petition as to Morse's knowledge of the falsity of his representations.

For this error the judgment will be reversed and the cause remanded in which all the judges concur.