## SERRANO, Respondent, v. MILLER & TEASDALE COMMISSION COMPANY, Appellant.

### St. Louis Court of Appeals, March 13, 1906.

1. **FRAUD AND DECEIT: Scienter.** To sustain an action at law for fraud and deceit, the scienter must be established, and the scienter may arise in any one of three ways: *First*, when a party makes a false representation with knowledge that it is false; *second*, where a party represents something to be true as of his own knowledge, when he has no knowledge as to whether it is true or false, and it is in fact untrue; *third*, where the party by reason of his peculiar position has "special means of knowledge" and makes representations which he ought to have known to be false, if he did not.

2. ——: ——: **Defense of Good Faith.** Where in an action at law for fraud and deceit, the scienter is alleged to be false statements with knowledge of their falsity, it may be shown in defense that the statements were made in good faith on reasonable appearances and without knowledge.

3. ——: ——: ——. But where the scienter relied upon is the making of false representations as of the maker's own knowledge, when in truth he did not know whether they were true or false, then he cannot show in defense that he believed his statements to be true.

4. ———: ———: **Actual Knowledge.** Where a commission merchant ordered a carload of oranges, representing that he had already sold it to certain parties naming them, he knew whether his statement was true or false and his case came under the first head and evidence of good faith was admissible.

5. ———: ———: ———. Where a commission merchant ordered a carload of oranges representing that he had already sold them to certain parties naming them, when he had had no recent negotiations with such parties respecting such sale, he had no reasonable ground to believe his statements true, there was no evidence of good faith, and in an action by the seller for fraud and deceit, an instruction for plaintiff which left out the question of scienter was not error, nor was it error to refuse instructions for defendant on the questions of good faith and the scienter.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy,* Judge.

AFFIRMED.

*H. Chouteau Dyer* for appellant.

(1) An action for deceit or fraudulent representations can not be maintained in the absence of proof that the party making the reprensentations believed, at the time he made them, that they were false, and knowing them to be false, intended that the party to whom they were made should act upon them, or that the party making them assumed actual knowledge of their truth though conscious he had no such knowledge. There must be proof of the *scienter.* Walsh v. Morse, 80 Mo. 568; Jolliffe v. Collins, 21 Mo. 338; Koontz v. Kaufman, 31 Mo. App. 397; Brookings v. Shinn, 25 Mo. App. 277; Paretti v. Rebenack, 81 Mo. App. 494; Green v. Worman, 83 Mo. App. 568. (2) The first instruction given by the court of its own motion is clearly erroneous. It left to the jury the sole consideration whether the representations charged were or were not made. It excluded from the jury's consideration every element of mistake; every element as to the truth or falsity of the representations

charged; it excluded every element of the defendant's knowledge or belief in the truth or falsity of the representations and it excluded every particle of evidence upon which defendant relied in making the representations. It amounted in fact to a peremptory instruction to find for plaintiff in actual damages as the fact that the sale of the two carloads of oranges was represented by defendant to plaintiff was admitted to have been made. Dulaney v. Rogers, 64 Mo. 201; Dunn v. Oldham, 63 Mo. 181; Bank v. Sells, 3 Mo. App. 85.

*Joseph Wheless* for respondent.

STATEMENT.—The action is for deceit. The material facts, in brief, are that the plaintiff, Mr. Serrano, is Mexican consul at the city of St. Louis and is also an importer of oranges from his native country. The defendant corporation is engaged in the selling of fruit, etc., on commission. On October 20, 1902, the plaintiff then having a car containing three hundred boxes of Mexican oranges on hand, was approached by Mr. Teasdale, president of the commission company, with regard to handling the same on commission. A conversation relative thereto was held over the telephone between the parties and the plaintiff declined to place the fruit in the hands of the commission company unless he knew in advance that they were sold and to whom and for what price. Thereupon Mr. Teasdale represented to the plaintiff that he had sold the same and made and delivered the following writing to plaintiff, evidencing the same:

"October 20, 1902.

"Mr. R. Serrano, City.

"Dear Sir: Please give bearer the bill lading on car No. 545 A. T. & S. F., which we have sold, as reported to you over the telephone just now.

"Yours truly,

"MILLER & TEASDALE COMMISSION CO.

"Dict. EPT-D.          "E. P. TEASDALE."

This not being sufficiently definite as to terms, etc., to satisfy the plaintiff, he required a further and more definite statement containing the name of the purchaser and the terms of the sale before delivering the bill of lading to the commission company, and the defendant executed and delivered to the plaintiff the following additional writing, setting out the purchaser and price as requested:

October 20, 1902.

"Mr. R. Serrano, City.

"Dear Sir: Car No. 545 A. T. & S. F. is sold to Coyne Bros. of Chicago. We want to divert this car tonight. The car is sold at $3.25 and $3.

"Yours truly,

MILLER & TEASDALE COMMISSION CO.

"Dict. E. P. T.                    "E. P. T."

Upon receipt of the second of these writings and relying upon the representations therein contained, the plaintiff was induced to and did deliver the bill of lading, evidencing title to said car of oranges and the car of fruit as well, to the defendant.

Three days thereafter, on October 23rd, plaintiff having on hand another car containing three hundred boxes of Mexican oranges, the president of defendant commission company called him over the telephone and some conversation was had relative thereto. The same requirements were made by the plaintiff as before, which resulted in the defendant executing and delivering to the plaintiff the following writing:

"St. Louis, Mo., Oct. 23, 1902.

"Mr. R. P. Serrano, City.

"Dear Sir: Please send by bearer B. L. for first car Guettaris oranges which left La Barca October 14. You gave us sizes the other day. We have sold the car to the H. L. Spencer Co. at Oskaloosa at $3.40 delivered.

"Please send B. L. by bearer so we can divert car; it is now at Kansas City.

"Yours truly,

"MILLER & TEASDALE COMMISSION CO.

"Dict. EPT-HCP.          "E. P. TEASDALE."

Relying upon the representations contained in said writing, plaintiff was induced to and did deliver the bill of lading of the car of fruit mentioned therein to the defendant. The defendant was to retain ten cents per box as commission for making and collecting on said sales as its compensation therefor. The matter ran on for a few weeks when the plaintiff received notice that car No. 545 mentioned was lying on the railroad track at Chicago and car No. 790 was lying on the railroad track at Oskaloosa unclaimed; that the firms to whom they were said to have been sold denied having made the purchase alleged, and declined to receive the fruit. Thereupon plaintiff started out to dispose of the fruit and save as much as possible for himself therefrom. He caused the Chicago car to be diverted to Milwaukee, and having failed to find a satisfactory market there, proceeded to Minneapolis, Minnesota, employed brokers, diverted the two cars to that city and sold the same for the best price he could obtain therefor; that his loss on account of the sale of the oranges at a reduced price on account of their depreciated condition, his personal expenses on the trip and incident to the transaction, brokerage fees and additional freight charges thereon amounted to the sum of $621 less than would have been his returns had payment been made to him in accordance with the representations of the commission company in the first instance regarding their sale. On his return to St. Louis, he rendered an account of the whole transaction to the commission company, and demanded reimbursement from them therefor, which they declined to do. Thereupon this suit was brought on the allegation of fraud and deceit.

The petition is in two counts. The first sets up the false representations, etc., concerning the sale of car No. 545 to Coyne Brothers of Chicago, October 20th; the second sets up false representations concerning the sale of car No. 790 mentioned to H. L. Spencer Company of Oskaloosa, October 23rd; that defendant knew such representations to be false, etc.; that the plaintiff was by such false representations, induced to and did believe that said cars were sold to the parties mentioned for the price named; relied thereon, and so believing, delivered said cars to the defendant; whereas in truth and in fact they were not sold; that they were permitted to depreciate in value, and that as a result of such false and fraudulent representations, the loss and expenses heretofore mentioned were entailed upon the plaintiff. There was also a prayer for punitive damages, which was eliminated by the failure of the jury to find a verdict thereon.

The answer was a general denial.

At the trial, the plaintiff developed the facts as stated. By the deposition of Mr. Coyne, a member of the firm of Coyne Bros. it was affirmatively shown on behalf of the plaintiff that such firm did not buy the oranges mentioned nor any other oranges from the defendant during the year 1902, nor did they negotiate with the defendant company for the oranges mentioned. Mr. Ellis, manager of the Spencer Company testified that his firm had not and did not buy nor order the oranges from the defendant and knew nothing of the matter whatever until the car was on the track at Oskaloosa and his attention was called thereto by the railroad agent at that place; whereupon, not having ordered the fruit, he declined to accept it; that soon thereafter he received a telegram from Miller & Teasdale Company requesting him to make an offer on the car; that his firm was then supplied with oranges and he declined to make an offer thereon.

The evidence, as detailed, stands practically uncontroverted on the part of the defendant. The defendant

seeks to justify its action under the allegation of deceit, however, on the ground that it acted in good faith in the matter and that it had reasonable grounds to believe that it had sold the oranges to the parties mentioned at the prices named, as represented by Mr. Teasdale to the plaintiff, and in support of this proposition, Mr. Teasdale gave evidence to the effect that in due course of mail, his firm had received the following postal card from H. L. Spencer Company dated ten days before the representations were made to the plaintiff concerning car No. 790 shipped to Spencer Co.:

"Oskaloosa, Ia., February 10, 1902.
"Miller & Teasdale Com. Co., St. Louis, Mo.

"Gentlemen: We are in the market for a carload of oranges. Kindly quote by return mail or call us by 'phone, indicating what you have to offer. We would want good, sound, sweet, ripe, good colored fruit, including good salable sizes. Awaiting your reply, we remain,

"Yours very truly,
"H. L. SPENCER COMPANY, Branch."

That on this postal card dated October 13th, without communicating with said firm in any manner whatever, he forwarded the car mentioned in the writing on the 23rd day of October to that firm. And as to the car shipped to Coyne Brothers of Chicago, he gave testimony that Mr. Fry, a broker in Chicago and the defendant's correspondent there, had called him over the telephone the day before saying that Coyne Brothers of that city were in the market for a carload of oranges and that Fry requested the shipment; that the carload was forwarded in accordance with this advice, without any communication whatever with Coyne Brothers thereabout. He assigned as reasons for not having communicated with the Spencer Company at Oskaloosa and Coyne Brothers at Chicago, that in each locality the defendant company had a correspondent, other brokers, through whom they did business; that they would make a con-

signment and notify the local brokers and expect them to complete the transaction. The serious fault with this showing, however, is that such local brokers were in no sense agents of the purchasers, but on the other hand, were agents of the defendant commission company, if they represented any one in the transaction.

Peremptory instructions were asked by appellant at the conclusion of the plaintiff's evidence and on the whole case, both of which were refused by the court. The court submitted the issues of deceit arising on the first and second counts of the petition in two several instructions which are identical, except that one deals with the alleged fraudulent representation made October 20th relative to car No. 545 and the other to the alleged false representation made October 23rd concerning car No. 790, as alleged in the different counts. Inasmuch as these instructions are otherwise identical, but one will be set out, which is in words as follows:

"1. The court instructs the jury, that if you find from the evidence that on or about the 20th day of October, 1902, the defendant company, through any of its officers or agents, represented to the plaintiff that it, the said defendant, had sold or had a purchaser for a certain carload of oranges, referred to in the evidence as car No. 545 then belonging to plaintiff and consigned to him by railroad freight, and that defendant requested plaintiff to deliver said car or the bill of lading evidencing title to said oranges to it, the said defendant, and that said representations were false in point of fact and defendant, at the time, had no such purchaser for said carload of oranges and had not sold them, and that plaintiff in belief of and relying upon said representations delivered said bills of lading and the possession of said carload of oranges to the defendant company, and that the said defendant took possession of said carload of fruit and diverted it from the point where it then was, and that as the direct result of said false representations and diversions by defendant plaintiff was put to any

loss, expense or damage, then the verdict of the jury must be for the plaintiff on the first count of the petition."

This instruction is assailed on this appeal on the ground that it permitted a finding for the plaintiff without requiring the jury to find a *scienter*. The criticism is that the instructions should have required the jury to find that the representations were not only false but were known to the defendant to be false at the time they were made, which, of course, would be proof of the fraudulent intent or *scienter;* or that it should have required the jury to find what in law would be equivalent to the proof of *scienter* and that is that the statements of Mr. Teasdale that the car was sold to the parties and at the prices named, were made as facts of his own knowledge, when in truth he had no knowledge whatever on the subject as to whether the car was sold or not sold, or as to whether the statement made by him to that effect was true or false. The criticism would seem just and ordinarily would be fatal, but whether or not it is on the peculiar facts of this case will be noticed further in the opinion.

The defendant requested and the court refused the following instructions:

"1. The court instructs the jury that if they find and believe from the evidence that at the time the defendant represented to the plaintiff that the carload of oranges contained in car number 790 was sold to H. L. Spencer & Company in Oskaloosa, Iowa, and that at the time the defendant represented to the plaintiff that the carload of oranges contained in car 545 was sold to Coyne Brothers of Chicago, Illinois, had a reasonable right to believe that the sale of said two carloads of oranges had been made by the defendant company or by agents representing said company to said parties aforesaid at the price represented by the defendant to the plaintiff then their verdict must be for the defendant.

"2. The court instructs the jury that before the plaintiff can recover in this suit they must find and believe from the evidence that the defendant in his representations in regard to the sale of the two carloads of oranges mentioned in the evidence perpetrated a fraud upon the defendant and the court further instructs you that before you can find that defendant perpetrated fraud upon plaintiff in this transaction you must find that the representations made by defendant to plaintiff in regard to the sale of said two cars of oranges were false and known to be false by the defendant at the time said representations were made or that said representations were made by the defendant to the plaintiff without belief in their truth, recklessly, carelessly and in disregard whether they were true or false."

On its own motion, the court gave the following instruction:

"The court instructs the jury that the fact, if such be the fact, that the defendant may have been informed by some third party, or may have believed that said two cars No. 790 and No. 545 had been sold, is no defense to this action so far as actual damages is concerned and the jury are instructed to disregard any and all evidence of those facts in determining plaintiff's right to recover actual damages."

Instructions on punitive damages and on other phases were given and refused without criticism.

NORTONI, J. (after stating the facts).—The criticism is that the instructions failed to require the jury to find the *scienter*. That there must be *scienter,* either actual or constructive, in order to support an action at law for deceit, is beyond question. The false representation may be made *scienter* in contemplation of law if the other elements of liability are present in one of three ways.

First. A false representation made with the knowledge of its falsity by the utterer is *scienter* in law and

therefore proof that the party made the false representation concerning a material fact with knowledge that the representation was false at the time it was made, satisfies the law in so far as *scienter* is concerned, for from the fact that the representation was made with knowledge of its falsity, it must be taken that it was made with an intent to deceive and the corrupt element or evil design—actual knowledge of its falsity being present—*scienter* is thereby actually established. On an allegation under this phase of the *scienter* the issue is the actual evil intent as distinguished from honest error and innocent mistake. [Bank v. Byers, 139 Mo. 627, 41 S. W. 325; Walsh v. Morse, 80 Mo. 568; Dulaney v. Rogers, 64 Mo. 201; Dunn v. White, 63 Mo. 181; Owen v. Rector, 44 Mo. 389; Derry v. Peek, L. R., 18 App. Cases, 374; Kountze v. Kennedy, 147 N. Y. 124; 1 Bigelow on Frauds (1888), 510-511.]

In the history of our jurisprudence, many cases arose where frauds had been perpetrated and the rule above stated was insufficient to meet the requirements of complete justice for the reason that in many instances it was impossible to establish by evidence that the utterer knew of the falsity of the representation at the time of making it and therefore the cause would fail for want of proof of the *scienter,* and the rule was found to be inadequate to reach those ends of perfection sought to be attained by the common law whereby there should be rendered adequate redress for every wrong. As a result of these conditions, the law, in its process of evolution from adjudications on the different shades and kinds of deceit and in order to meet and deal with such cases as arise where a wrong has been perpetrated by the misrepresentation of one person and relied upon by another to his damnification, when the case in itself is incapable of affirmative proof, that the utterer of the representation knew such representation to be false, has supplied us with two further principles having application to the establishment of the *scienter* in contemplation of law,

which two principles have become now fixed rules of decision by which *scienter* is taken to be constructively established in certain cases in order that justice may not be defeated, and therefore it is universally recognized in the courts of common law jurisdiction that where the other essential elements of liability are present, *scienter* may be constructively supplied by law.

Second. When a party makes a representation of a material fact as of his own knowledge when in truth he has no knowledge whatever on the subject either of its truth or its falsity. In such case, inasmuch as the utterer has no knowledge on the subject whatever, it would be impossible to establish a *scienter* by proof showing that he knew the representation to be false, for the reason that no showing pro or con on the subject could be made. Therefore, the law will constructively supply the *scienter* because of the reckless conduct of the utterer for the very good reason that a positive statement of fact implies knowledge of such fact, and if the party who makes it has no knowledge upon the subject, he is telling *scienter* what is untrue; he is affirming his knowledge when in truth he has no knowledge to affirm. [Hamlin v. Abell, 120 Mo. 188, 25 S. W. 516; Caldwell v. Henry, 76 Mo. 254; Dulaney v. Rodgers, 64 Mo. 201; Dunn v. White, 63 Mo. 181; Lovelace v. Suter, 93 Mo. App. 429; Paretti v. Rebenack, 81 Mo. App. 494; Knappen v. Freeman, 47 Minn. 491; Fisher v. Mellan, 103 Mass. 503; Montreal River Lumber Co. v. Mihills, 80 Wis. 540; Joliffe v. Baker, 11 Q. B. Div. 225; Derry v. Peek, L. R. 14 App. Cases 337; Rothchild v. Mack, 115 N. Y. Ct. App. 1; Bennett's Notes on Benjamin on Sales (6 Ed.), 449; 1 Bigelow on Frauds (1888), 509-513.]

And likewise, there is a second instance in which the law will supply. It is:

Third. The law will raise up or constructively supply *scienter* when the party, by reason of his peculiar position has "special means of knowledge," and under such circumstances (the other sufficient elements of

liability being present) makes representations which he ought to have known, if he did not, to be false. This phase of the law pertaining to the *scienter* has application only to representations made within the peculiar special means of knowledge, and the strictness of the rule proceeds upon the theory that it is the utterer's duty to know such things as are peculiarly within his knowledge, as representations made under such circumstances are likely to carry great weight. The law will not permit him to assert for knowledge what he must have known that he ought not even to have believed. [Raley v. Williams, 73 Mo. 310; Doyle v. Hort, 4 L. R. Irish (Ch. Div.), 661; 1 Bigelow on Frauds (1888), 509.] This latter phase of the *scienter,* however, is in no way involved in the case now under consideration. It is pointed out here only by way of recognition, and will not be otherwise noticed in the opinion.

It follows from what has been said, that under the first phase of the *scienter* where the allegation is that the utterer made the representation false in itself and that he knew it was false, that the burden rests upon the party holding the affirmative of the issue not only to show that the representation was made, but that it was false and that the utterer knew or believed it was false at the time it was made, for it is by proof of the knowledge of or belief in its falsity alone that *scienter* is estabilshed under this phase of the law. And therefore the gravamen of the charge, the issue affirmed on the one side and denied on the other, is the corrupt purpose, the evil intent or design, and it is not enough to show that the utterer had reasonable grounds to believe it was false, but it must be shown that he knew or believed it was false. From this, it essentially follows that in such case, the issue being only the *scienter,* the evil design, it is competent and proper for the defendant to show, in resisting such charge, that he did not know the representation was false and to this end he is permitted to show that he acted in good faith on reasonable appearances and was

honestly mistaken, having good reason to believe in the truth of the representation when made. And it is upon this essential and fundamental principle of the law of fraud and deceit under the first phase of the *scienter* that rests the decision of numerous of our cases, among which are Dunn v. White, 63 Mo. 181; Walsh v. Morse, 80 Mo. 568; Green v. Warren, 83 Mo. App. 568; Merchants Nat. Bank v. Sells, 3 Mo. App. 85; Paretti v. Rebenack, 81 Mo. App. 494. In which cases it is frequently asserted that "innocent misrepresentation made through mistake, without knowledge of its falsity and with no intention to deceive, cannot justify a personal action for damages." [Dulaney v. Rodgers, 64 Mo. 203.] For, if the law were otherwise, the courts would be overcrowded with litigation born of honest error and innocent mistake. [See also 1 Bigelow on Frauds (1888), 510-511 and cases cited.] The distinction is also pointed out in Judd v. Walker, 114 Mo. App. 128, 89 S. W. 558.

This brings us to a consideration of the second phase of the *scienter,* when the case is not that the utterer knew the representation to be false, but is when he asserts a material fact as of his own knowledge when in truth he had no knowledge on the subject as to whether the representation was true or false. Under this phase of the matter, the law being satisfied by proof of the party's reckless or wanton conduct in asserting positively as of his own knowledge a fact concerning which he knew nothing of its truth or falsity, as stated above, raises up and supplies the *scienter* constructively from this reckless conduct on his part and as it would be impossible to prove that the utterer knew or believed at the time of the utterance that his statement was untrue, inasmuch as the proposition itself predicates upon the hypothesis that the utterer himself did not know whether the statement was true or false, or had no knowledge on the subject, then the question of the utterer's good or bad faith in so recklessly representing facts as of his

own knowledge, the truth or falsity of which he knew nothing, is not an issue thereunder, for the law steps in and denounces the whole as fraudulent by supplying the *scienter,* and it is not competent for him to show in defense thereto that he believed the facts to be as stated by him at the time, for such attempted showing on his part would be inconsistent with the proposition involved as well as with the fundamental rules of logic.    Under such circumstances, the proposition itself involves, first, the establishment of the fact that he made the representation as of his own knowledge, without any knowledge whatever of its truth or falsity; the establishment of which proposition, *ipso facto,* excludes the notion that he could have any knowledge, pro or con, upon which to base a belief, reasonable or otherwise, on which good faith could predicate.   So we take it that when the *scienter* relied upon is that constructively established, as indicated above, by proof of the false representation of facts as of one's own knowledge when in truth the party had no knowledge on the subject whether the representation was true or false, the matter of good faith or that the utterer believed what he asserted to be true, has no application and cannot be given in defense.   This proceeds, of course, upon the theory that a positive statement implies knowledge, and if the party who makes it has no knowledge upon the subject, he has told *scienter* what is untrue.   He has affirmed his knowledge when he had none to affirm.   This doctrine is fortified by the principles underlying the adjudications and is amply supported by authority.   [Fisher v. Mellen. 103 Mass. 503; Cole v. Cassidy, 138 Mass. 437; Raley v. Williams, 73 Mo. 310; Hamlin v. Abell, 120 Mo. 188-207; Converse v. Blumrich, 14 Mich. 109; Lovelace v. Suter, 93 Mo. App. 429-438; Hubbard v. Wear, 79 Ia. 687; Brownlee v. Campbell, H. L. 5 Appeal Cases, L. R. 936; 1 Bigelow on Frauds (1888), 513-514-515; 14 Amer. and Eng. Ency. Law (2 Ed.), 99, 100.]

With these principles before us, let us determine

the case at bar. When Mr. Teasdale stated in the writing that he had sold the oranges to certain named firms at the prices mentioned, he stated a fact, the truth or falsity of which was then within his knowledge, and he then and there knew such statement was either true or untrue, or had reasonable grounds to believe in its truth or untruth. We are persuaded therefore, that this case is not properly determinable under the second phase of the *scienter*, inasmuch as that principle has application to a representation made as of one's own knowledge when the party making the representation has no knowledge whatever of the truth or falsity of the statement. The law of constructive *scienter*, therefore, does not obtain here for the reason that Mr. Teasdale had full knowledge on the subject at the time he executed the writing, representing that the sale had been made and the defect complained of in the instruction, i. e., that it omitted to require the jury to find the evil intent, cannot be aided under the law of constructive *scienter*. If the statement was true, Mr. Teasdale either knew it was true or had reasonable grounds to so believe when he made it. If it was false, he knew it was false, or had reasonable grounds to believe it so when he made it and and the case is properly determinable under the allegation that he made a representation which was false and that he knew it was false at the time he made it. This theory, then, eliminated entirely the proposition of constructive *scienter* and devolved upon the respondent the burden of establishing by proof the actual fraud alleged. On this issue it was competent and proper for Mr. Teasdale to show in defense that he had sold the oranges as represented or that he had made such negotiations thereabout as to induce him to believe that he had sold the same and therefore made the representations to that effect in good faith. In other words, in the event of his failure to show an actual sale of the fruit, he had a right to show that he had conducted negotiations prior to making the representation to such an extent as to in-

duce a reasonable belief in the truth of the representation at the time; that he made the representation relying upon this belief, and that the representation was made in good faith as a result of honest error and innocent mistake, as distinguished from a dishonest purpose or evil intent. In this view of the case, respondent's first instruction would no doubt have served the purpose of the law of deceit with much greater force and better effect had it, in terms, required the jury to affirmatively find that Mr. Teasdale knew the representations to be false at the time they were made by him; but whether it would have better served the purpose of the case at bar, by submitting the ever-essential *scienter* to the jury for an affirmative finding, as indicated, is a different question, the proper solution of which will require an examination of the evidence.

The case coming under the first phase of the *scienter,* as it does, places the burden on the respondent to establish, by competent proof, that the representation was made, that it was false, and that Mr. Teasdale knew it was false at the time of making it. Upon this being shown, *scienter* is *prima facie* established. In compliance with this principle, respondent's proof showed affirmatively that Mr. Teasdale represented that he had sold the oranges to the firms named and at the prices mentioned, and then established by the two firms mentioned that they had not purchased the oranges nor had they negotiated with appellant for the same in any manner. This established prima facie the representation and its falsity, and it being a matter within the knowledge of appellant, appellant knew it was false when made and the *scienter* was thus established prima facie, whereby the burden of proof shifted and it devolved upon the appellant to show a state of facts from which the jury could infer that the appellant had sold the oranges as represented, or that it had negotiated to that end at least, sufficiently to show that appellant believed, or had reasonable grounds to believe, that it had sold the or-

anges as represented. Appellant, recognizing this to be the law, assumed the burden thus imposed and sought to discharge it. In so doing, did it satisfy the law in that behalf? Let us inquire. It first admitted having made the representation and admitted that it had not sold the fruit. These questions are then eliminated.

It remains to examine the question, Did the appellant show such negotiations as were calculated to show a reasonable belief in Mr. Teasdale that the fruit was sold when he said it was? The entire showing in that behalf is that appellant had received a postal card from Spencer & Company of Oskaloosa, dated ten days before, saying they were in the market for a car of oranges. Appellant did not show that it had answered this card by letter, telegram or otherwise, or that it had ever, in any manner, suggested or made a sale of these or any other oranges to that firm. As to Coyne Brothers of Chicago, the entire showing is that Mr. Fry, a broker and appellant's correspondent and agent, and not the agent of the alleged purchaser, called appellant over the telephone and advised that Coyne Brothers were desirous of purchasing a car of oranges. It was not shown that appellant ever communicated with or attempted to sell the oranges to that firm. The result of the showing is that appellant had been informed that the two firms, one in Chicago and one in Oskaloosa were desirous of buying oranges, and nothing more. Certainly no reasonable mind could infer from these facts that appellant had reasonable grounds to believe that it had sold the oranges to those firms at the prices mentioned when no attempt to make the sale at those or any other prices had been made. It therefore appears upon the uncontradicted proof and the admitted facts of the case, that appellant made the representation, that it was false, that the appellant knew it was false when it was made, and Mr. Teasdale had no grounds, reasonable or otherwise, for that matter, upon which to predicate a belief in the truth of the representation made by him in order

to justify under the theory of innocent mistake or honest error.

Upon this uncontroverted showing, the *scienter* was conclusively established by proof and no sufficient showing was made contra thereto to raise an inference in the minds of the jury to the effect that appellant made that representation as a result of honest error or innocent mistake, or otherwise in good faith, and we are of the opinion that it was not error for the court to treat the *scienter* as an established fact in the case. In truth, it was an uncontroverted fact and no longer an issue on which it was necessary to require an affirmative finding by the jury. This is especially true in view of the case of Hamlin v. Abell, 120 Mo. 188, decided by our Supreme Court, in which an instruction quite as silent on the matter of *scienter* as the one here involved, was approved, in a case where the essential facts stood uncontradicted, very much as in the record before us. That decision, under our Constitution, is conclusive on us and it is abundant authority on this propositon. The respondent's first instruction, even though it omitted to notice the essential *scienter*, will not be condemned as error under that authority and the peculiar facts of this case.

The first instruction requested by appellant and refused by the court, sought to submit to the jury the question of appellant's good faith in making the representation, etc. It was properly refused, for the reason that there was no evidence from which the jury could infer that appellant believed or had reasonable grounds to believe that he had sold the oranges.

The second instruction requested by appellant and refused by the court stated correct principles of law, and it might have been given without error, but inasmuch as it required the jury to find the *scienter*, which was conclusively established by the proof introduced as well by appellant as respondent, which rendered it no longer an issue in the case, its refusal was not error.

The instruction given by the court of its own motion, by which the jury was instructed to the effect that the fact that appellant may have been informed by some third party or may have believed that the two cars were sold, was no defense, would have been error had there been any evidence in the case that appellant believed, or had reasonable grounds to believe, that it had sold the oranges, but inasmuch as the evidence wholly failed to show that it had any grounds upon which to base such belief, we decline to condemn it and pass it as not being reversible error under the peculiar facts of the case.

It is unnecessary to notice separately the several other assignments of error. They will all be overruled.

The judgment is manifestly for the right party and will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.