LEACH, Appellant, v. BOND et al., Respondents.

St. Louis Court of Appeals, March 3, 1908.

FRAUD AND DECEIT: Scienter. In an action for damages caused to plaintiff by misrepresentations, on the faith of which the plaintiff purchased a tract of land, it was not necessary to prove that the defendants made the misrepresentations alleged, knowing them to be false, or that they were made with intent to deceive; the making of such false representations not knowing whether they were true or false was a fraud upon the plaintiff.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,*
Judge.

REVERSED AND REMANDED.

*O. L. Haydon* and *W. P. Campbell* for appellant.

When affirmative representations of fact are made, and designed to be acted on by another, and he does act upon such representations believing them to be true, when they are in fact false, the party making them is liable for the consequences thereof, regardless of the question of his knowledge of such falsity or intent to deceive. Mitchel v. Zimmerman, 4 Tex. 80, 51 Am. Dec. 717; Halderman v. Chambers, 19 Tex. 1; Pendavis v. Gray, 41 Tex. 326; Laper v. Robinson, 54 Tex. 514. Representations made by a party as of his own knowledge and not as a mere matter of opinion, or general assertion, about a matter of which he has no knowledge whatever, is the same as a statement of a known falsehood, and constitutes fraud. Caldwell v. Henry, 76 Mo. 255; Nauman v. Oberle, 90 Mo. 699.

*Green & Green* and *Orr & Luster* for respondents.

BLAND, P. J.—This action is to recover damages resulting from alleged false and fraudulent representations charged to have been made by defendants to plaintiff in respect to a tract of land purchased by plaintiff of defendant John C. and Mary A. Bond. At the close of plaintiff's evidence the jury were instructed to return a verdict in favor of all the defendants except John C. Bond and C. C. Epps. The trial progressed as to these two defendants and resulted in a verdict and judgment in their favor, from which plaintiff appealed. Defendants have filed a motion to dismiss the appeal for imperfections in the abstracts filed by plaintiff. The abstracts fail to show some of the facts necessary to warrant an appellate court to inquire into the merits of the appeal, but the case is here on a full record, which shows that a timely motion for new trial was filed and overruled; that plaintiff filed a proper affidavit for appeal and an appeal was allowed; also that the bill of

exceptions was signed and filed within the time allowed by the court. In these circumstances it has never been the practice of this court to dismiss an appeal, or to refuse to consider a case on its merits, for the reason the abstracts fail to state all the foregoing facts. The motion to dismiss is overruled.

The facts developed at the trial, succinctly stated, are that plaintiff and defendant Kautz reside in Audrain county, Missouri; that Kautz was interested in finding purchasers for land in Howell county, Missouri, and, in August, 1905, he and plaintiff visited said county, plaintiff intending to purchase a farm if he could find one to suit him. On arriving at West Plains (the county seat of Howell county) plaintiff and Kautz went to the real estate office of Markham & Adams, who showed them a list of lands they had for sale in said county. This firm called in Mr. Epps, who was also a real estate agent, and he drove plaintiff and Kautz into the country to look at lands. Neither Mr. Epps nor Markham & Adams had Bond's farm listed for sale; Epps, however, had had it for sale the year previous and was acquainted with the farm and knew it was a good one, and drove plaintiff to it for the purpose of looking at it and to see if it could be purchased. On arriving at the farm, Epps interviewed Bond and learned from him that he would sell the farm for $37 per acre. Bond was building a flue at the time and told Epps to show plaintiff the farm, and plaintiff testified that Bond said he would stand by anything Epps would say about the farm. The farm contained 189.40 acres, about 130 of which was in cultivation. After talking to Bond, plaintiff and Epps walked over a portion of the farm, which was fenced on the east, west and north lines, but there was woodland on the south side of the farm not under fence. Near the southeast corner was an old log cabin; a few rods south of this cabin was an old brush fence. Plaintiff testified that Epps pointed to the cabin

and fence and told him the brush fence was on the south line and there was about eighteen acres of woodland. After walking over a portion of the farm, plaintiff and Epps returned to the house. Plaintiff testified that after their return, "Bond came out in the yard where he had been at work and I asked him about this timber south of the creek and he said there was sixteen or seventeen acres of it. I asked him if $37 per acre was the least he would take, he said it was and I told him I would buy the place. Plaintiff also testified that Bond said "the line run just south of the cabin." Plaintiff did not go over the timbered portion of the tract. The parties had dinner and then the written contract was prepared and signed by Bond and wife and by plaintiff, whereby plaintiff agreed to pay $37 per acre, or $7,007, for the farm. Plaintiff complied with his part of the contract and Bond and wife made him a deed to the land. After acquiring title to the land, plaintiff made a survey of the farm and ascertained that instead of there being but eighteen acres of woodland there was forty or fifty acres, and instead of the south line being near the cabin and brush fence it was several rods south of that fence. The woodland is described as being unfit for cultivation and as rough and rocky, and not worth, according to plaintiff's evidence, more than two or three dollars per acre.

T. L. Shafer, a witness for plaintiff, testified as follows: "We went out there from town here and drove up to the farm and Epps got out. Bond was up on top of the house fixing up something. Epps got out and went around to where Bond was and brought him out and introduced him to Leach and says, 'Leach wants to look at your farm and wants to know your price.' Bond says, '$37 per acre.' Leach then asked how much there was in the place and Bond told him 189 and 40-100 acres, but he said he was at work and that Epps could take Leach and show him the place and whatever

Epps said he would stand for, and we drove on down to the new house and through the barn on down the lane and turned west and drove on west to where they said there was a spring; there Epps, Kautz and Leach got out of the buggy and I stayed with the team. They went on down there but soon came back and Leach asked where the southwest corner was from there and Epps says, 'It is right up there,' and called attention to something up there, a little piece of fence or something, I don't remember what it was. There was a little house up there and Epps said the south line run right up by that, just above it. Epps asked me what I thought of the place and I told him I thought it was a nice farm, and I asked him how much timber there was and he said sixteen acres, and then we went back to the house and I asked Bond how much timber there was and he said there was eighteen acres and maybe twenty. We got dinner and they asked me to write a contract and I demurred at first, but after dinner Mrs. Bond cleared the dishes off and I wrote the contract."

Epps testified that all he said to plaintiff about the number of acres of timbered land was that in his opinion there was about eighteen acres of it, and Leach said he wished there was more; that after dinner Bond told Leach he would go over the farm and show it to him; that Leach asked him how many acres of timber there was on the place and Bond said there was eighteen acres of good white oak timber on the farm.

Bond testified as follows: "Just before or just after dinner we closed the trade. I told him I wanted him to be satisfied. I told him there was a meadow on the east he had not seen and some more land on the west he had not seen. I told him I would like to show it all to him and he said that he was satisfied, that he had seen all he cared to. I told him there was some good and some bad pieces on the land that he had not seen, but he said he was satisfied and he never asked

the question as to how many acres there was in timber and how many acres in cultivation. . . . When he mentioned the timber, he says, 'Is there as much as eighteen or twenty acres of that good timber?' and I told him I guessed there was that much."

Plaintiff asked the following instruction: "In this connection you are further instructed that a false representation made by a party as of his own knowledge and not as a matter of opinion or general assertion, about a matter of which he has no knowledge whatever, is, in legal effect, the same as a false representation made with knowledge of its falsity," which the court modified by adding the following: "if such false representations were made with intent to deceive," and gave the instructions as modified. The idea is carried through all the instructions, that to entitle plaintiff to recover, the representations as to the number of acres of woodland in the tract must not only have been false but defendants must have known they were false at the time they were made, or have made them with intent to deceive plaintiff. This is not the law. In Hamlin v. Abell, 120 Mo. 188, 25 S. W. 516, in a well-considered opinion by GANTT, P. J., and on a review of many authorities, it was held: "Where one makes, as of his own knowledge, a false representation, not knowing whether it is true or false, it is fraud as much as if he knew it to be false." It is the effect not the corrupt motive the law looks at and denounces as fraud. [See also Nauman v. Oberle, 90 Mo. 666; Caldwell v. Henry, 76 Mo. 254; Serrano v. Miller & Teasdale Commission Co., 117 Mo. App. 185, 93 S. W. 810.]

There is no evidence in the record connecting defendants other than Epps and John C. Bond with the alleged false representations, and the court did not commit error in directing a verdict for them. For error in the modification of plaintiff's instruction, the judgment is reversed and the cause remanded for new trial

as to defendants John C. Bond and C. C. Epps. It is so ordered. All concur.